### HENRY RYDER *vs.* WILLIAM WILCOX.

An agreement between W. W. and H. R., dated October 2, 1865, provided that W. W. should enter into and carry on, for three years from April 17, 1865, the business of man-ufacturing oils and candles, "under the name, style and firm" of the X. Company, furnish the necessary capital to a limited amount, let the company have the use of his coal land and mining apparatus, with the right to take coal, for which he was to be paid by the company a certain sum per ton, and be allowed interest "on the capital stock invested in said company;" that H. R. should be employed as the general agent and manager of said business, devote himself wholly thereto, receive "in payment for his said services" a certain sum per year and one half of the net profits of the business, let to the company his oil works, tools and apparatus at a certain rent, and allow to the com-pany free of charge the benefit of all trade marks and patents used by him; that annual settlements should be made, and all sums due thereon to H. R. should be paid, or, if not paid, credited to him and interest allowed thereon; that "all the operations of the late limited partnership of H. R. since April 17, 1865, are to be considered as done and per-formed under this agreement, so far as the business of the company is concerned, and this agreement relates back" to said April 17. H. R., in 1867, brought an action of con-tract against W. W., the declaration in which set forth the agreement and alleged that the defendant excluded the plaintiff from the management and profits of the business, refused to make annual settlements and payments, and, although continuing the busi-ness on the premises and with the tools of the plaintiff, and making large profits, refused to recognize that the plaintiff had any rights under the agreement. *Held*, on demurrer, that the parties were partners, and the action was not maintainable.

CONTRACT. Writ dated July 26, 1867. The declaration was as follows : " And the plaintiff says the defendant made a con-tract in writing with him, a copy whereof is hereto appended and made part of this declaration, whereby the defendant agreed to enter into and carry on with the plaintiff the business of man-ufacturing and selling oil and candles in the manner and upon the terms set forth in said written contract; and the plaintiff avers that he has in all respects well and truly performed the promises and agreements on his part to be kept and performed

under said contract; but that the defendant, without sufficient cause or justification, has failed and refused to perform his promises and agreements in said contract contained, and has violated said contract, in this: that he has arbitrarily, and against the will of the plaintiff, and without sufficient cause or justification, entirely and completely excluded the plaintiff from all participation in the conduct and management of said business and in the profits thereof, and has arbitrarily assumed the exclusive management, control and profit thereof to himself, without regard to the rights of the plaintiff; and that the said defendant has failed and refused to make an annual settlement of account with the plaintiff, and annual payment, in accordance with the terms of said contract; and that, though the defendant has continued said business to the present time upon the premises, and with the tools and appliances of the plaintiff, and has made large profits therefrom, yet he has refused to acknowledge and recognize that the plaintiff has any rights under the contract."

The contract declared on, which was signed by the parties and dated October 2, 1865, was as follows: " The said Wilcox does hereby agree to enter into, establish and carry on the business of manufacturing lubricating and other oils, and parafine candles, under the name, style and firm of ' The New Bedford and Ohio Oil and Candle Company,' and to furnish the capital necessary for carrying on said business to the amount of $50,000. The business is to be carried on at New Bedford and also in the state of Ohio, and is to be continued for the term of three years from the seventeenth day of April last past; and the said Ryder is to be employed as the general agent, superintendent and manager of said business. And the said Ryder does hereby agree to take charge of said business as the agent, manager and superintendent of the same, and to devote all his time, attention, skill and knowledge to said business, and to exert his best endeavors to secure the success and prosperity of said business during the said term of three years from the seventeenth day of April last past.

" And it is further agreed by and between the said parties, that the said Ryder shall receive in payment for his said ser-

vices the sum of $1000 per year during the said term, and one half of the net profits of the said business. Annual settlements are to be made, and all sums due to said Ryder on said settlements are to be paid ; or, if not paid, the amount is to be credited to him, and interest is to be allowed him on the same. And the said Wilcox is not to reduce the capital of said company below the sum of $50,000 during the term of his contract.

" And the said Ryder does further agree to hire to and let to said company his oil works, buildings, fixtures, tools and apparatus for manufacturing oil and parafine candles at New Bedford, at and for the rent of $1600 per year during the term of this contract. The buildings are to be kept in repair by the said Ryder, but the tools, fixtures, machinery and apparatus are to be kept in repair by the company, and are to be returned to said Ryder in equal value at the end of this contract. The said company are also to have the use and benefits of all trade marks, names and patents now used by said Ryder, free of any charge, during the time of this contract, and the same are to be redelivered to said Ryder at the expiration of this contract, free from any claim or charge.

" And the said Wilcox does further agree that the said company shall have the use of his coal lands, oil works, mining apparatus, &c., in the state of Ohio, and the right to receive coal as much as shall be desired for the use of the company ; for which, and the use of his said works and apparatus, he is to be allowed and paid by said company the sum of fifteen cents per ton. All necessary repairs on said works and apparatus are to be made by the company

" All the operations of the late limited partnership of ' Henry Ryder ' since the seventeenth day of April last, are to be considered as done and performed under this agreement so far as the business of the company is concerned, and this agreement relates back to the seventeenth day of April last past.

" The said Wilcox is to be allowed interest on the capital stock invested in said company, at the rate of bank interest in Massachusetts."

The defendant demurred because the declaration set forth no cause of action; and the case was thereupon reserved by *Foster*, J., for the determination of the full court.

*T. D. Eliot & T. M. Stetson*, for the defendant.

*E. L. Barney*, for the plaintiff.

COLT, J. It is necessary to determine whether the contract declared on constitutes a partnership, or was only an agreement by which the plaintiff was to take a share of the net profits, not in the character of partner, but as agent, and as compensation for labor and services, or capital contributed.

Where creditors are not concerned, and the question arises between the parties only, the intention as ascertained from all the provisions of the instrument must govern. If payment for services rendered is to be made in proportion to the profits of the business, and the profits are referred to only as a measure of compensation, and if no lien is given upon the property or assets of the business, to the exclusion of other creditors, then the mere fact that a party is, to the extent stated, indirectly interested in the profits, will not make him a partner. In general, a participation in profits is alone sufficient to establish a partnership, unless it appears, from other circumstances and stipulations, that such was not the intention, as where the party who contributes his services, money or goods to the prosecution of a particular business with one or more parties, relies solely on the personal responsibility of the latter, and does not intend to have any title or interest in the resulting property or its proceeds. *Hawes* v. *Tillinghast*, 1 Gray, 289.

Most of the stipulations in this contract are equally consistent with either theory. In substance, Wilcox agrees, on his part, to go into the manufacturing business, under a certain designated name, style and firm; to furnish the necessary capital to a limited amount, and to let the company have the use of certain coal lands, oil works and mining apparatus, in Ohio, with the right to take coal, for which he is to be paid by the company a certain rate per ton. Ryder, on his part, agrees to devote all his time and skill exclusively to the business, as general agent and manager; to lease certain oil works and personal

property at New Bedford to the company at a stipulated rent and to give the company the use and benefit of his trade marks and patents free of charge. He is to receive for his services a certain sum per year, and one half of the net profits. Annual settlements are to be made, and all sums due Ryder are to be paid or credited. Interest is to be allowed to Ryder on his credits, and to Wilcox on the capital paid in. The word "firm" is used, and the contemplated business is spoken of as that of a "company." The inference is, that the parties to the contract intended to be the members composing it; and that the plaintiff, having a common interest in the stock, looked to the property and business of the concern for his stipulated share, and not solely to the personal responsibility of the defendant. The rights of the plaintiff and defendant to their share of the profits, and the allowances respectively provided for in the agreement, depend upon similar stipulations, and stand on the same ground. And all doubt seems to be removed by the concluding provision, by which all the operations of the limited partnership of Henry Ryder are embraced within its terms, and the contract is carried back to a previous date, in order to cover them. Without further explanation, this last stipulation must be held to carry into the new concern certain previous transactions, in the profits of which, as general partner, Ryder was entitled to participate; and is inconsistent with the interpretation that the only relation he sustained to the new business was that of agency. Upon the whole, we think that the relation created and continued was intended to be, and was, that of partnership. *Williams* v. *Henshaw*, 11 Pick. 79. *Denny* v. *Cabot*, 6 Met. 82 3 Kent Com. (6th ed.) 24. Story on Part. §§ 18 & seq.

It remains to consider whether the plaintiff's case comes within any of those rules which permit one partner to maintain an action at law against another, for a violation of the partnership agreement.

It is alleged, in substance, that the defendant has excluded the plaintiff from the management and profits of the partnership business; has refused to make annual settlements, and payments thereon; and, although he has continued the business

upon the premises and with the tools of the plaintiff, and made large profits, has refused to recognize the plaintiff's rights under the contract. The action is brought before the expiration of the time limited for the duration of the partnership, and without any formal dissolution of it. It is not for the recovery of an ascertained general or special balance belonging to the plaintiff. There can be no recovery at law of the profits of the business, so long as it is possible, upon a final settlement and account between the partners, that the plaintiff might be liable to re-fund. It is not sought to charge the defendant as upon an agreement preliminary to the commencement of business, made for the purpose of launching the partnership, like promises to furnish capital; or upon separate securities given by one partner to another on partnership account; or where there has been a voluntary separation of funds from the partnership stock, and one partner is alone interested in the contract relating to it.

It is said that an action at law for damages for the breach of an express agreement, entered into by one partner in favor of another, will only lie where the action can be properly tried without going into the partnership accounts, and the damages sought will belong exclusively to the plaintiff, and where the plaintiff will not be liable in any contingency, affecting the future joint business, to contribute to his own payment. Lindley on Part. 731, 740.

But, without stopping to inquire whether this action can be maintained without violating these rules, it is sufficient to say that, whatever the nature of the agreement, it must be one in which the defendant binds himself personally to the plaintiff. We cannot find, in the instrument declared on, that the defendant did bind himself personally to make good to the plaintiff any certain sum as his share, if the partnership assets should prove deficient. The stipulations in this regard are to be construed not as personal covenants between the parties as individuals, but rather as provisions defining and regulating the mode in which the business of the company should be conducted and the profits divided. The agreements, on the other hand, for contribution to the partnership funds and property which each is to

make, are made binding by name on each, and would no doubt be classed with those express agreements which may be the foundation of an action. *Venning* v. *Leckie*, 13 East, 7. *Brown* v. *Tapscott*, 6 M. & W. 119.

The principles we are considering are illustrated in the case of *Paine* v. *Thacher*, 25 Wend. 450, where it was held that, if one partner promises another partner to pay him a compensation for personal attention to the business of the concern, this promise may be enforced at law, notwithstanding the existence of the partnership and written articles providing for such payment. Nelson, C. J., says, in this case, that the item for services had been adjusted, and there was an express promise to pay it, and the compensation was to be contributed " as a part of the capital, to be furnished by the defendant in lieu of personal attention."

It is plain that there can be no recovery at law for work and labor for the firm or for contributions to its funds, in the absence of an express agreement of the defendant; and the plaintiff does not aid his case by alleging a willingness to perform, and a prevention by the defendant.

The rights of the parties are regulated by the general principles of the law of partnership, when not changed by special agreement. They are joint owners and possessors of the capital stock, funds and effects of the company. Each has equal right to the possession, and equal right in the conduct and management of the joint business, and is clothed with like authority

In the opinion of the court, upon the case stated in this declaration, no action at law can be maintained. If the declaration could be taken as alleging an entire repudiation by the defendant of the contract and of the relation of partnership, with a claim of damages for such a breach of the contract, instead of compensation for services in conducting the business, and for a share of its profits, such an action might be maintainable. We do not so understand its allegations. A failure and refusal by the defendant to perform his promise and agreement is indeed charged, together with an exclusion of the plaintiff, and a refusal to acknowledge that he has any rights under the con

tract. But it also alleges a refusal to make the annual settle-
ment of accounts and annual payments, according to the con-
tract, and sets forth a continuance of the business upon the
premises and with the tools and appliances of the plaintiff, with
large profits therefrom, from a participation in which he has been
excluded. The remedy in such cases is in equity, where the
power to investigate accounts, to compel specific performance,
and to restrain breaches of duty for the future, affords the only
relief which can be had.

In *Capen* v. *Barrows*, 1 Gray, 376, it was held that an action
at law to recover damages, brought by one partner against his
copartner, for neglect of partnership business, could not be main-
tained while the affairs of the firm remained unsettled, although
it was expressly agreed that each partner should devote his
whole time to the partnership business. The principle of that
case is applicable here. *Fanning* v. *Chadwick*, 3 Pick. 420.
*Williams* v. *Henshaw*, 11 Pick. 79. Met. Con. 133. *Holmes* v
*Higgins*, 1 B. & C. 74.            *Demurrer sustained.*