LEANDER A. COUILLIARD vs. ALBERT S. EATON.

Suffolk.   Nov. 18, 1884. — March 7, 1885.   FIELD & COLBURN, JJ., absent.

In an action of tort by A. against B. for the mutilation and conversion of a prom-
issory note, A. testified that B. agreed to take an interest in the business of
A. and furnish a part of the capital; that, to raise money therefor, A. and B.
made a promissory note payable to bearer, which was delivered to A. to get
discounted; that A. procured the money on his own note, and gave the money
to B.; that A. did not, until the trial, notify B. that he had not procured the
money on the joint note and afterwards taken it up; that he demanded of B.
payment of his part of the amount, but B. denied liability, and asked to see
the note, and, on receiving it, cut out his name, against A.'s remonstrance; and
that the partnership had never been settled.   B. testified that he signed the
note, not as a partner, but for the accommodation of A., who was to pay it
himself; and that he cut his name from it with A.'s assent, and after a full set-
tlement.   The judge submitted to the jury certain questions, and their answers
showed that B. did not sign the note for A.'s accommodation, but for the pur-
pose of having A. raise money for a business in which A. and B. were jointly
interested; that B. did not take his name from the note with A.'s consent, but
against A.'s will, and wrongfully.   Held, that the questions failed to submit to
the jury all the material issues of fact, and that it was error to order, against
A.'s objection, a general verdict thereon.   Held, also, that if A. and B. were
partners, A. could not maintain against B. an action at law for mutilating the
note until a settlement of their joint interests was had.   Held, also, that an
action would not lie against B. for conversion of the note, without proof that
A. was individually entitled to its possession, and that B. had wrongfully de-
prived him thereof.

TORT.   The declaration contained two counts.   The first was
in the nature of case, for mutilating a promissory note by re-
moving the defendant's name therefrom.   The second was in
the nature of trover, for the conversion of the note.

At the trial in the Superior Court, before *Brigham*, C. J., at
the close of the evidence, the judge declined to give certain
rulings requested by the defendant, and submitted to the jury
certain specific questions; and, upon answers to them being re-
turned, directed the jury to return a verdict for the plaintiff for
the full amount of the note.   The defendant alleged exceptions,
which appear in the opinion.

*W. Gaston & R. Lund*, for the defendant.

*D. F. Crane*, (*E. O. Howard* with him,) for the plaintiff.

DEVENS, J.   It is within the discretion of the court to submit
to the jury special questions as to facts in dispute in the trial of
a case, and to rule that, as the finding shall be thereon, a verdict

shall be rendered for either the plaintiff or the defendant. If there are admitted and undisputed facts, these may properly be included as a part of the basis of the ruling. If there are disputed facts, the correct finding upon which is unimportant to the decision of the case, they may be disregarded. When a ruling is made by the court, upon special questions submitted to the jury, that the verdict shall be for the plaintiff or the defendant, it is necessarily assumed that a finding upon any disputed facts in favor of the contention of the party against whom a verdict is rendered would afford no reason why it should not be thus rendered. Where a verdict may properly be ordered, if a question of damages is left for decision it must be submitted to the jury, unless these are fixed by a rule of law, as when they are nominal, or capable of simple mathematical computation. *Graves* v. *Washington Ins. Co.* 12 Allen, 391. *Spoor* v. *Spooner*, 12 Met. 281. *Dorr* v. *Fenno*, 12 Pick. 521, 525. *Todd* v. *Whitney*, 27 Maine, 480.

In the case at bar, after a protracted trial, and after numerous requests for rulings by the defendant, the judge submitted to the jury five questions, and upon the answers of the jury thereto directed a verdict in favor of the plaintiff for the full amount of the note, for the mutilation and conversion of which damages were sought. If, under this mode of procedure, all the facts in dispute in the case which had any legitimate bearing thereon were decided, and if the ruling then made was correct, the requests on behalf of the defendant for instructions as to the law governing the case would become immaterial. Before the general verdict was rendered by direction of the court, the defendant, among other things, objected that all the disputed issues of fact in the case had not been submitted to the jury, and further contended that, if any damages were recoverable, they could be only nominal.

The declaration in the action contained two counts: one, in case, for the mutilation of a certain promissory note, signed by the plaintiff, the defendant, and Charles W. Stetson, payable in four months to the order of the bearer, and of the date of September 13, 1876; the other, in trover, for the conversion of the same note. Without in detail repeating the questions addressed to the jury, and their answers thereto, the facts as found

were that the defendant did not sign the note for the accommodation of the plaintiff and Charles W. Stetson, but for the purpose of having it used by the plaintiff in raising money for a business in which the defendant was jointly interested with the plaintiff and Charles W. Stetson; that the defendant took his name from the note in question on September 29, 1880, without the consent of the plaintiff, against his will, and "wrongfully." As the jury were not instructed as to the legal rights of the defendant in and to this note, either as requested by the defendant or otherwise, and as to the bearing of the facts thereon, we do not understand by the use of the word "wrongfully" that anything more is intended than that the act was done without authority, and in violation or derogation of the actual possession of the note by the plaintiff. To treat it as more than this would be to hold that the jury had been permitted to pass upon the legal rights of the defendant, which could not have been the intention of the learned judge who presided.

The evidence on behalf of the plaintiff tended to show that he became a partner with Stetson in the business of constructing and putting upon the market a patented machine; that subsequently the defendant engaged in the business with them, taking an interest of one third therein, and agreeing to furnish one third of the money; that the note in suit was made for the purpose of raising money for the partnership, and was intended to be paid by the sale of machines on hand; that it was given to the plaintiff that he might get it discounted; that he took it for that purpose; that he did not use it for that purpose, but raised the money on his own note and his own collateral security; and lent it to the partnership, paying the money into the hands of the defendant, who it had been agreed should have charge of it; that when his own note became due, the plaintiff paid it; that neither the defendant nor Stetson was notified of this transaction, nor that he had not used their note; that, so far as he knew, they supposed, until he testified at the trial, that he had used their joint note, had thus raised the money, and afterwards had taken up the same. He further testified that the defendant was liable to pay one third of the note, and the plaintiff and Stetson one third each, and that he never claimed the whole note as due from the defendant to him until after the defendant

mutilated it; that he demanded the note of the defendant, or at least the third of it; that the defendant denied that he was responsible for it, asked to see it, and, after examining it, cut his name out of it, against the plaintiff's remonstrance. It further appeared by the plaintiff's testimony, that, on September 13, 1876, the plaintiff, Stetson, and the defendant became partners, with one third interest each in the business and the profits, and that no settlement of the partnership had ever been made.

This evidence was contradicted by the defendant, whose evidence tended to show that he was not a partner in the note transaction, but signed the note for the plaintiff, who was to pay the same wholly; that the plaintiff had never claimed it of him until this suit was brought; and that he took his name from it with the assent of the plaintiff, after various negotiations and a full settlement.

The special findings do not dispose of all the material questions raised by these two different and conflicting conditions of the evidence requiring to be dealt with. It was found by the jury that the defendant did sign the note in question for the purpose of having it used to raise money for a business in which the defendant was jointly interested with the plaintiff and Stetson. But in order to determine the defendant's legal liability, it was necessary to ascertain whether the circumstances under which he signed it, the purposes for which it was to be used, the use actually made of it, or rather the failure to use it, and the relation of the signers as partners, were as described by the plaintiff himself. Even if the note was not signed by the defendant, as claimed by him, for the accommodation of the plaintiff, and if the defendant, against the will of the plaintiff, has removed his name therefrom, which the jury have found, yet, if it was not, as against him, a valid security, the plaintiff has suffered no injury by reason of the defendant's having removed his name therefrom.

Again, if the plaintiff and the defendant were partners, the whole transaction was a partnership transaction, and the attempt to recover the amount of this note by reason of the mutilation of it is really an attempt by one partner to recover of another partner a sum which he has advanced to the partnership, and which has gone into its business. The only right, independent of that of the other partners, which the plaintiff can have to this

note is by reason of such advances. Upon the testimony of the plaintiff, the affairs of the partnership are still unsettled, and an action at law does not lie between partners on such transactions. Story Part. § 219. *Williams* v. *Henshaw*, 11 Pick. 79. *Myrick* v. *Dame*, 9 Cush. 248. *Gomersall* v. *Gomersall*, 14 Allen, 60. *White* v. *Harlow*, 5 Gray, 463. *Ryder* v. *Wilcox*, 103 Mass. 24.

But, independently of this objection, there was evidence that the note in question never went into circulation, never was used to raise money upon, nor was any authority ever given to the plaintiff to use it as security for money which he raised otherwise than on said note, and himself advanced to the partnership. He had no right to it superior to that of the defendant. It was not even a voucher, as he had not advanced money upon the strength of it by any authority of his partners. The note having been made that it might be discounted, and this purpose having been abandoned, it had no further function to perform. It was in the plaintiff's hands at the time when the defendant cut his name from it, but there was then no intention that it should be used as originally proposed.

The considerations we have suggested were fairly brought to the attention of the learned judge by requests for rulings in relation thereto. The findings made do not pass upon and dispose of this evidence, upon which they were based. If we assume that it establishes the facts which it tends to show, and it comes largely from the plaintiff's own testimony, the plaintiff was not entitled to recover upon this note. Still less was he entitled to recover the full amount thereof. He had never contended that the defendant was bound to pay more than one third thereof, and the injury which the note received did not prevent an action from being brought thereon, if this might otherwise be done. Nor, even if he had been entitled to hold the note as a voucher, is it easy to see why he should be allowed to recover more than nominal damages.

We have not deemed it advisable to discuss many questions raised, as they will not probably be presented in the same form at a new trial.

For the reasons stated, the entry must be,

*Exceptions sustained.*