## WOOLWORTH v. McPHERSON.

### (Circuit Court, S. D. New York. May 6, 1893.)

1. PARTNERSHIP—CONSTRUCTION OF ARTICLES.

W. & M. executed the following agreement: "St. Joseph, Missouri, February 1st, 1881. The undersigned have this day formed a partnership for the transaction of a general book and stationery business, * * * M. to be guarantied $2,000 per annum, same to be and to come out of his half of the profits; but, should the one-half profits not amount to $2,000 in the year, he shall not be held for any deficiency in the salary account. In consideration of the guaranty of $2,000 per annum to M., he shall give his entire time, during reasonable business hours, to the business of the firm, and W. shall not be held to give the same any more time than he may chance. * * * This agreement to run one year from this date." *Held*, that it was a copartnership agreement, and that the supposition of M. that the contract guarantied him a salary of $2,000 a year, and half the profits above that sum, but that he should not be liable as partner for any losses in business, was a mistake of law, for which he was not entitled to relief.

2. PAROL EVIDENCE—CONTRACT.

In a suit by W. against M. growing out of a former partnership between them, an order of dismissal was entered, pursuant to the following writing addressed to plaintiff's solicitor: "You will please enter an order in this cause discontinuing the same upon the payment by the defendant of the costs therein. Yours, etc., W. Agreed to. M." *Held* that, as this writing was informal, and contained no promise by either party to the other, and defendant's signature was presumably merely for the protection of the clerk, the writing did not constitute such a contract or memorandum thereof that defendant would be prevented in a subsequent suit from showing by other evidence that the order was entered pursuant to an agreement releasing him from all liability in consideration of the payment of the costs and certain services which he was to render to plaintiff.

In Equity. Bill by Calvin C. Woolworth against Thomas B. Mc-Pherson for the dissolution of a partnership and for an accounting. Dismissed.

Smith, Bowman & Close, for plaintiff.
Hyland & Zabriskie, for defendant.

TOWNSEND, District Judge. This is a bill in equity for the dissolution of an alleged copartnership between the complainant and defendant, and for an accounting. On February 1, 1881, the parties executed the following agreement:

"St. Joseph, Mo. Feb'y. 1st, 1881.

"The undersigned have this day formed a partnership for the transaction of the general book and stationery business, as successors to Woolworth & Colt, assuming the obligations and assets of Messrs. Woolworth & Colt, as shown by the inventory this date. B. F. Colt to have a salary of $2,000. Two thousand dollars per annum to be charged to expenses. T. B. McPherson to be guarantied one hundred sixty-six and 67/100 dollars per month, ($2,000 per annum,) same to be and to come out of his half of the profits; but, should the one-half profits not amount to two thousand dollars in the year, he shall not be held for any deficiency in the salary account. In consideration of the guaranty of $2,000 per annum to McPherson, he shall give his entire time, during reasonable business hours, to the business of the firm, and C. C. Woolworth shall not be held to give the same any more time than he may chance. Bank debt, as it now stands, substantially about $14,000, shall bear interest at the rate of 8 per cent. per annum, payable monthly, and shall not be increased except by mutual consent, but may at any time be reduced, as the resources of the concern shall permit. Interest on C. C. Woolworth's surplus, as shown by the books, to be credited his account at the rate of 8 per cent. per annum. This agreement to run one year from this date.

"[Signed]                    C. C. Woolworth, T. B. McPherson."

The defendant alleges in his answer: First. That the above agreement was not a copartnership agreement. Second. That in July, 1882, it was orally agreed by the parties that the written agreement should be so construed as to give to defendant, in any event, an assured salary of $2,000 a year, and one half of the net profits, if any, in excess of said sum, and that defendant should not be liable for any losses in said business. Defendant further alleged that under this oral agreement he continued to conduct the business up to January 1, 1883. Third. That on or about March 29, 1883, the plaintiff brought a bill against the defendant in the district court of the state of Nebraska for the same causes of action alleged in the present suit; that defendant appeared therein, and filed his answer, and afterwards, in consideration of his payment of the costs of said suit, and the rendition of services whereby defendant effected a settlement of the business affairs of the plaintiff, the plaintiff released the defendant from all claims and causes of action against him, and dismissed said suit.

The first defense cannot be sustained. The defendant does not demand, by way of affirmative relief, that the contract be reformed. He does not claim that it was procured by fraud, or that there was any mistake of fact on his part. He claims that he supposed the contract guarantied to him a salary of $2,000 a year, and half the profits above that sum, but that he should not be liable, as partner, for any losses in the business. If he was mistaken in his under-

standing of the effect of the contract, it was a mistake of law, for which, under the circumstances, he is not entitled to relief. Hunt v. Rousmaniere's Adm'rs, 1 Pet. 1.

There is some evidence in support of the second defense, that an oral agreement was afterwards made by the parties in accordance with the defendant's understanding as to the effect of the written agreement. The defendant testifies that during his management of the business he rendered full statements thereof to the complainant every six months, in which the losses were charged to the complainant's surplus account. In July, 1882, he went to Chicago to meet the complainant and a prospective purchaser of the business, taking with him a full statement of the business. Defendant testifies that complainant then objected to the charge of losses to his private account, and said he proposed to hold defendant for his share, but that he (the defendant) referred to his understanding of the contract, and refused to return to St. Joseph unless this question should then be finally settled. He says that complainant then told him if he would return to St. Joseph, and stay until the first of the year, there would be no further claim on him for losses, and that in accordance with that agreement he went to St. Joseph, and remained there until February 12, 1883. But as the complainant denies the making of any such oral agreement, or his acquiescence in the claims made by defendant in his statements, I think the evidence is insufficient to sustain this defense.

The third defense presents the vital question in the case. On February 26, 1884, the Nebraska suit having been removed into the United States circuit court, the following order was entered therein:

"Calvin C. Woolworth vs. T. Buchanan McPherson et al.

"To J. M. Woolworth, Esq., Solicitor for Plaintiff.—Sir: You will please enter an order in this cause, discontinuing the same upon the payment, by the defendant, of the costs therein.

"Yours, etc.,                                                                C. C. Woolworth.

"Agreed to.   T. B. McPherson."

Complainant, claims that this paper constitutes a complete and entire contract between the parties, and that all prior negotiations between the parties are merged therein. He urges that, as this paper was intended by both parties to express the whole contract between them, it is not competent for the defendant, by oral testimony, to seek to prove further stipulations providing for his entire release from all his liabilities to complainant. Where the parties have deliberately put their mutual engagements into writing, in such language as imports a complete contract, all parol testimony of further declarations will be rejected. Thompson v. Insurance Co., 104 U. S. 259. But it does not seem to me that the principle of law invoked by claimant has any application to the writing referred to. This paper appears to be a mere letter of instruction by claimant to his attorney, to discontinue the suit upon terms. The defendant is only a party to it in the sense that he assents to the terms of the discontinuance therein expressed. Presumably, this was done for the protection of the clerk of court in entering the order by consent. There is no suggestion that the parties considered the paper as a

contract. There is no promise by either party to the other. But, even if it were to be treated as a memorandum of a contract, there is nothing to prevent either party from showing that the memorandum is not complete in itself, but that there were other independent stipulations entered into by them, not contradictory to the written memorandum. This is especially true where the writing is informal and incomplete upon its face. In such a case there is no presumption that it contains all the terms of the contract. Jones, Com. & Tr. Cont. §§ 129, 134, and cases cited.

But complainant contends, irrespective of the claim that oral evidence is inadmissible to vary the letter of discontinuance, that in fact it served to fully carry out the only agreement between the parties. He says that when the defendant left the partnership business at St. Joseph, and went to Omaha, he took $2,000 from the firm treasury to which he was not entitled, and that the primary object of the Nebraska suit was to recover that specific $2,000; but that the defendant, having afterwards convinced him that he had lost the $2,000 in grain speculations, and that to press the suit would be financially disastrous to the defendant, he (the complainant) agreed, if the defendant would return to St. Joseph and help to close up the business, then he would "dismiss this case, and wind it up." The defendant claims that, in consideration of the services to be rendered by him at St. Joseph, the complainant not only agreed to dismiss the suit, but to discharge him from all further liability under said agreement of February, 1881. It is extremely difficult to say just what contract the parties did make, because of the peculiar way in which they dealt with each other. The complainant, while then professing the greatest friendship for the defendant, and confessedly needing his help to close up the business, seems now to feel that he could not have meant to surrender his claim. The defendant was so anxious to get rid of the Nebraska suit that he seems to have been willing to accept the discontinuance order as sufficient evidence of a release of all liabilities.

In view of the contradictory conduct and conflicting testimony of the parties, I have been obliged to carefully examine the relations of the parties, and the objects they respectively had in view, in order to determine what contract they intended to make, and did make, and how they understood its terms. The agreement of February, 1881, was inartificially drawn. It purports to be a copartnership, but it contains the following stipulation:

"T. B. McPherson to be guarantied one hundred sixty-six and 67/100 dollars per month, ($2,000 per annum,) same to be and to come out of his half of the profits; but, should the one-half profits not amount to two thousand dollars in the year, he shall not be held for any deficiency in the salary account. In consideration of the guaranty of two thousand dollars per annum to McPherson, he shall give his entire time, during reasonable business hours, to the business of the firm, and C. C. Woolworth shall not be held to give the same any more time than he shall chance," etc.

This statement is, to say the least, ambiguous. Evidently the parties disagreed as to its effect in case there were losses. It is claimed that the complainant misrepresented its legal effect at the time of the making of the agreement. It is admitted that it was

afterwards the subject of dispute between the parties. The claims of the defendant were fully stated by him in his answer in the Nebraska suit, in which he denied any liability to complainant. The agreement to discontinue the Nebraska suit was made in New York, in the summer of 1883. Defendant thereupon returned to Omaha, and called upon Judge Woolworth, counsel for complainant, and requested him to carry out the agreement. Judge Woolworth told defendant that claimant had concluded not to dismiss the suit until after defendant had succeeded in settling a certain claim against complainant, held by certain outside parties. Thereupon the following correspondence passed between the parties:

"Omaha, 29th August, 1883.

"Dear Mr. Woolworth: Have just seen the judge, and he advises me you had concluded, when he left you, to preserve the statu quo in your suit against me until settlement of the P. A. & Co. account. I did not so understand it when I left you, and am sorry for this decision. The delay may be very serious to me, and it can do you no possible good. I go to St. Joe Friday or Saturday, and will do what I can to help you there.

"Truly,                              T. B. McPherson."

"N. Y., September 11th, 1883.

"Dear Mac: Yours Aug. 29·came during my absence from home. Ask J. M. W., and I think he can make such explanation to the elevator people as will enable you to carry out your plans with them in mutual safety. I don't want or intend to disturb you, nor to push for a dollar not to be got, and in a little while suppose the suit will be discontinued, according to direction of J. M. W."

"Omaha, 15th September, 1883.

"Dear Mr. Woolworth: To yours 11th, etc. * * * I note carefully what you say of the settlement of the suit now pending between us. It is entirely useless for me to attempt to do anything with the elevator company upon any one's say so. I have tried that. Nothing short of a withdrawal of the suit and a release from further liabilities under it will serve me. This you have promised, and the judge promises, but says it can or will be done after I have been to St. Joe, and aided you in the settlement of the difficulties you are there meeting. There's therefore nothing between us; but a little time is of no possible value to you, but is most important to me. There's but one possible advantage to you in holding back this settlement,—the fear which your brother appears to harbor, that I may go back on my promise to aid you should this suit be settled before the work is done. This thought, to me, is contemptible, and, in spite of all the past, seems to me to be beneath and unworthy of you. I repeat here that I am ready and willing to do all I can to assist you, and I know I can do so; but I ask you to show a like disposition. Will you not do it? I await your reply, and will not go to St. Joe until I get it.

"Yours very truly,                    T. B. McPherson."

"N. Y., Sept. 21st, 1883.

"Dear Mac: Yours of the 15th rec'd. If you go to St. Joe, confer and act with Colt, and, whatever you and he conclude, I shall be satisfied with. Can the Xmas cards be lumped to Phelps & B. or Levin, Atchinson? Your views about the inevitable further shrinkage in the remaining resources of W. & McP. are probably correct. There are outstanding notes yet to be paid, (about $1,560,) and the overdraft with W. & G. cash is about $3,300; and so long as my money holds out you see I must keep paying, and in the very best event there will be a heavy loss,—I should now guess 15 to $20,000,—in this liquidation, as compared with the supposed surplus of Jany., 1883. Of course, I want all the help I can possibly get in closing up these W. & McP. matters, and it is your duty and interest to make your full contribution to the extent of your ability, to get the most favorable possible conversion of those re-

mainders. You can prove your loyalty by your works, and in due time the controversy can be adjusted. Or, if it will suit your purpose and preference, I should think we may properly take your note, and then we could dismiss the suit at once; otherwise, we ought to let it rest for a while longer, and, when satisfied everything is straight, we can settle up. This appears to me to be reasonable in view of events since Jany. 1st. The fact is, Mac, this has been a bad business for me, and you cannot complain, but, on the contrary, congratulate yourself if, after a while, this claim is withdrawn. Think it over, and see if you would act any quicker if situations were reversed. I hope to hear of your best and prompt efforts at St. Joe.

"Yours truly, C. C. W."

The correspondence subsequent to this date, and the uncontradicted evidence of the defendant, show that, acting under instructions from complainant, he went to St. Joseph on several occasions, and devoted his time to the settlement of the old business, and of the contracts made by complainant after dissolution. He secured the release of certain large claims against the complainant, collected accounts amounting to about $10,000, and remitted the proceeds to complainant, and generally performed valuable services on his behalf under the agreement. All the expenses of the trips to St. Joseph were paid by the defendant. On January 16, 1884, the final statement was sent to complainant, and on February 25, 1884, the parties met at Omaha, and complainant gave defendant the order of discontinuance.

This evidence convinces me that, when complainant promised to dismiss the suit provided defendant would return to St. Joseph, he led him to believe that he would release him from all further obligations under said original agreement. Otherwise, why did he not agree to continue the case for a definite period? Why did he insist upon holding the suit over defendant until he should settle up the matters at St. Joseph to the satisfaction of complainant? There was nothing to be lost to complainant in the dismissal of this suit, provided the cause of action remained, for the $2,000 had been drawn out of the bank before the commencement of the suit. There was nothing to be gained by defendant from a mere discontinuance of this suit, provided complainant reserved the right to institute a new one at his pleasure. When defendant said: "Nothing short of a withdrawal of the suit, and a release from further liabilities under it, will serve me. This you have promised. * * * There's therefore nothing between us," etc.,—complainant did not deny either the promise or the statement that there was nothing between them, but urges defendant that "it is your duty and interest to make your full contribution to the extent of your ability, to get the most favorable possible conversion of those remainders." It is not suggested that it is his duty to make any contribution of money; and when complainant further proposes, either to now take defendant's note, and "dismiss the suit at once," or "to let it rest for a while longer, and, when satisfied everything is straight, we can settle up," it seems to me the conclusion is irresistible that he meant to have defendant understand that a dismissal of the suit, whether upon the consideration of a note or of services thereafter rendered, meant a release of the whole claim. This conclusion is emphasized by the

suggestion, later in this letter, that defendant should congratulate himself if, after a while, this claim is withdrawn.

The claim that complainant at most only intended to release the $2,000 which he supposed defendant had deposited in the Omaha bank is disproved by the fact already referred to, that the money had been withdrawn before suit, and by the pleadings in the Nebraska suit, which show a claim for dissolution of the alleged partnership and an accounting. It is further effectually disposed of by the testimony of the complainant himself. He testifies that when he discontinued the suit he intended to call it quits with the defendant so far as that suit was concerned, and all that was contained and embodied therein, so far as he remembered what was in the complaint sworn to by him.

I have not overlooked the conduct of the parties after the commencement of the present suit, as bearing upon the construction and interpretation of the contract under which the Nebraska suit was dismissed. The evidence is so unsatisfactory that it throws little light upon the question. The parties had two interviews in New York. Neither of them testifies what the conversations were. It appears from subsequent correspondence that complainant gave defendant friendly assurances, which he interpreted as a promise to dismiss the suit. I think the admissions contained in complainant's letters show that defendant was justified in assuming that the suit would not be pressed. But there had been some discussion at these interviews as to the effect of the original agreement, and, after complainant had found them, he wrote defendant that they "seem more than ever to hold you for losses as well as for profits." He then adds that he did not promise to dismiss the suit, but did say that he would not take such action as would break defendant up. Defendant, it is true, admits that at the New York interviews he did not claim that there had been an adjustment of this claim, but he explains this by saying that he then had another agreement with complainant, "in which he agreed to dismiss this particular suit." And, finally, when defendant again writes to complainant, again asserting that such promise was made, and reproaching complainant for having broken faith with him, complainant writes the following letter in reply:

"Albany, June 29th, 1889.

"Dear Mac: Yours 22nd, via N. Y., reached me here today. Dismiss your apprehensions of suit. I told you in N. Y. I wouldn't do that, and I won't. I write now, late at night, in great haste, to relieve your anxiety, and will write more later."

Here is no denial of the promise, as alleged by defendant; and the only explanation of this letter vouchsafed by complainant is the following answer on cross-examination:

"Well, if I bring a suit, and pursue him for $2,000 or $3,000 more than he is worth, it would break him up. If I bring suit, and he pays me what he can afford to pay me, it don't break him up. That is what I mean."

In view of the facts as stated above, I think the suit should be dismissed. Let judgment be entered accordingly.