JOHN W. WINKELBACH *v.* HONOLULU AMUSEMENT COMPANY, LIMITED, AN HAWAIIAN CORPORATION.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED MAY 8, 1911.                    DECIDED MAY 16, 1911.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

CONTRACTS—*employer—employe—partnership.*

An agreement whereby H. A. Co. hires W. to conduct a popularity contest and as full compensation for his services W. is to have one-third of all moneys received from the sale of coupon tickets, does not constitute a partnership, but merely the relation of employer and employe.

OPINION OF THE COURT BY DE BOLT, J.

Plaintiff having filed his bill in equity praying for the appointment of a temporary receiver to take charge of the alleged partnership business involved in this suit and for an accounting concerning the same, moved for the appointment of such receiver and his motion having been denied, he was allowed an interlocutory appeal to this court.

The bill alleges, inter alia, that on March 16, 1911, plaintiff and defendant made and entered into an agreement in writing whereby, as plaintiff claims, they formed a partnership for the purpose of conducting a popularity contest in the theaters operated by defendant in Honolulu. The agreement referred to reads as follows:

"This agreement made between the Honolulu Amusement

Company, Limited, first party, and John W. Winkelbach, second party, witnesseth:

"1.     That in consideration of the mutual agreements hereinafter contained, said first party agrees to hire said second party to conduct for it a popularity contest in the theaters operated by said first party in Honolulu, City and County of Honolulu, Territory of Hawaii.

"2.     Said contest shall commence on the 17th day of March, 1911, and terminate on the 4th day of July, 1911, and be carried on in the name of said first party under the exclusive charge of said second party, subject to the control and direction of said first party.

"3.     The person receiving the highest number of votes shall receive as a prize a new automobile of the approximate value in Honolulu of Fifteen Hundred Dollars, which shall be furnished by said first party at its own expense.

"4.     The accounts relating to the sale of coupon tickets shall be settled once each day, and said second party shall upon such settlement immediately pay all moneys shown to be due thereby to said first party.

"5.     Said first party shall advertise said contest in the newspapers in Honolulu with its regular advertisements of its theaters, without charge to said second party; furnish at its own expense tickets with coupons attached, which coupons are to be used for voting for the contestants; honor all such tickets presented for performances in any of its theaters in Honolulu, within such time limit as it shall designate, for which it shall have received full payment in cash; and at its option, upon due notice to the public, shall have the right to reserve certain nights, not to exceed one night in each week, when coupon tickets shall not be received for any of its performances.

"6.     Said second party shall organize, equip and carry on at his own expense, except as otherwise herein provided, said contest; use his best endeavors to secure contestants to come to in said contest; obtain such prizes as may be agreed upon; canvass for donation of prizes in return for publicity; secure the highest bids obtainable for performances to contestants; keep in constant touch with contestants through himself or his agents, and advise them as to the ways to obtain votes; secure persons satisfactory to said first party to act as judges in such contest; procure and hire at his own expense, such agents and help as in his

judgment shall be necessary to successfully promote said enterprise; and in every way possible endeavor to obtain the best results for said contest.

"7.   Said second party shall receive as full compensation for the promoting and carrying on of said contest one-third of all moneys received by him or his agents or from the contestants in said contest, or arising from the sale of coupon tickets, or sale of performances upon bids secured by him as aforesaid; but he shall not receive any part of the money for tickets sold at the box offices (other than on coupon tickets which said first party may sell at his election at the box offices), nor any money received by said first party in the regular course of its business.

"8.   Said second party shall on or before the 15th day of April, 1911, deposit with the first party the sum of Five Hundred Dollars, to be held by it for the faithful accounting and payment to said first party of all moneys received by said second party, his agents or employes in the premises, to be repaid to said second party upon final settlement with him under this contract.

"9.   In case said second party shall violate any of the terms of this agreement on his part to be observed or performed, said first party shall have the right to terminate this agreement upon written notice delivered to him personally, or deposited in the Post Office addressed to him in Honolulu or to his last known Post Office address, and thereupon all interest of said second party under this agreement shall cease, and said one-third of the moneys theretofore received by him shall be full compensation to him for all services rendered and expenses incurred in the matter of said contest.

"10.   In case of the death of said second party, this contract may be carried on to completion by his personal representatives, or such person or persons as he may in writing appoint, who shall receive such compensation as said second party would have been entitled to if living."

   Other allegations contained in the bill need not be stated, as the question of partnership is the only one, in the view we take of the case, that will be discussed in this opinion.   Plaintiff admits that if the agreement does not constitute a partnership his suit cannot be maintained.

The question for consideration being confined to the agreement itself, we shall seek to ascertain therefrom the legal intention of the parties; the existence or nonexistence of the partnership being necessarily, a legal deduction to be drawn from the agreement before us.

Respecting the essential elements and tests of partnership, as regards liability between the parties themselves, we cite the following authorities:

"The requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their common benefit, each contributing property or services, and having a community of interest in the profits." *Meehan* v. *Valentine,* 145 U. S. 611, 618.

"Partnership is a contract of two or more competent persons, to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, and to divide the profits and bear the loss, in certain proportions." 3 Kent Comm. *24.

"Partnership is a legal entity formed by the association of two or more persons for the purpose of carrying on business together and dividing its profits between them." Parsons on Partnership (4th ed.), §1.

"Partnership is the relation subsisting between two or more persons who have contracted together to share, as common owners, the profits of a business carried on by all or any of them on behalf of all of them." Shumaker on Partnership, p. 2.

"Partnership is the relation existing between persons who have so contracted that the profits of some business enterprise conducted by any or all of them for them all enure to all as co-owners, and are shared accordingly." George on Partnership, §1.

See also, 30 Cyc. 349; 22 Am. & Eng. Ency. Law (2d ed.), 13 et seq.; *Woolworth* v. *McPherson,* 55 Fed. 558; *Omaha & Grant Smelting & Refining Co.* v. *Rucker,* 40 Pac. (Colo.) 853; *Price* v. *Middleton & Ravenel,* 55 S. E. (S. C.) 156; *Ryder* v. *Wilcox,* 103 Mass. 24; *Hawes* v. *Tillinghast,* 1 Gray 289; *Shea* v. *Nilima,* 133 Fed. 209; 1 Lindley on Partnership, 1 et seq.; *Salter* v. *Ham,* 31 N. Y. 321; Story on Partnership, §15 et seq.; *Barnes* v. *Collins,* 16 Haw. 340.

It is apparent from the foregoing definitions and authorities that two essential elements are present and indispensable in every partnership. These are, first, a contract between the parties; and, second, this contract must be for the sharing as common owners of the profits of a lawful business. While it is true, the instrument which we are considering is a contract, it is not a contract constituting a partnership. The essential elements mentioned by the authorities are lacking. The relation of plaintiff and defendant, as evidenced by the agreement, is contractual only. The contract of partnership is something more than an ordinary contract. It creates, in addition to the contractual relation, a status. It brings into existence, in a limited degree, a legal entity, the members of which are co-principals and who are, in contemplation of law, clothed with the power of mutual agency, whereby, within well defined limits, each member may act for all and in the name of the legal entity—the partnership. This agency results from and is inherently incident to the partnership. It need not be expressly authorized or mentioned. In the case at bar, however, as in all such cases, the agency, or power to act on the part of the plaintiff, was expressly created by the agreement, and did not result from any status or entity whatsoever. The agreement is an ordinary contract, whereby the defendant, "said first party, agrees to hire" the plaintiff, "said second party, to conduct for it a popularity contest in the theaters operated by said first party in Honolulu," and "said second party shall receive as full compensation for the promoting and carrying on of said contest, one-third of all moneys received by him or his agents;" that is to say, the gross returns were to be divided between them, one-third to the plaintiff as compensation for his services and two-thirds to the defendant as proprietor and employer, each to pay his own expenses, except that the defendant was to advertise the contest. The agreement is wholly destitute of the usual and ordinary words and expressions, such as "partnership," "partner," "profits," etc., commonly employed in partnership agree-

ments; and the language used fails to disclose, or even to intimate, any community of interest, or co-ownership, or sharing of profits, tending to show the relationship of partners. There is absolutely no element of profit sharing, or community of interest, or co-ownership contemplated in the money to be received under the agreement. The language employed simply shows a mere hiring by the defendant of the plaintiff to perform certain services for a specified compensation, thereby creating the relation of employer and employe, principal and agent. The expressions used are also wholly inconsistent with the idea of partnership. It is clear that the parties by their agreement did not intend or contemplate the sharing of any profits in the capacity of co-principals which is essential to a partnership. 30 Cyc. 371. But it is clear that they agreed to share the gross returns, which is not even *prima facie* evidence of partnership. 22 Am. & Eng. Ency. Law (2d ed.) 44. While profit sharing is not a conclusive test of partnership, it is, however, an important consideration tending to prove partnership; for an agreement to share profits is an essential element of every true partnership, and though its presence is not conclusive that a partnership exists, its absence is conclusive that a partnership does not exist. 30 Cyc. 369; 22 Am. and Eng. Ency. Law (2d ed.) 22, 23.

The plaintiff places considerable stress upon paragraph 10 of the agreement, which provides that in case of his death the agreement might be carried on to completion by his personal representatives, or by such person or persons as he should appoint. We see nothing in this provision tending to show that the parties intended to form a partnership. Such provisions, it is true, are sometimes incorporated in articles of partnership, but they may also be made a part of contracts for personal services. In the absence of express provision to that effect, neither a stranger nor the representatives of a deceased partner, or of a party to a contract for personal services, may of right perform the contract or enjoy its rights as a substitute for the de-

Winkelbach v. Honolulu Amusement Co., 20 Haw. 498.

ceased. Contracts of partnership, as well as contracts for personal services, are entered into by reason of the particular confidence each partner or party has in the fitness and capacity of the other. But there is no reason why the parties may not provide, in the event of death, for carrying out any contract for personal services, as well as that of partnership, by their representatives or other persons. Bishop on Contracts, §861; Clark on Contracts, p. 523.

The ruling of the circuit judge in denying the motion for the appointment of a receiver is, therefore, affirmed and the cause is remanded to the circuit judge for such further proceedings as may be necessary and proper.

*Lorrin Andrews* (*Eugene Murphy* with him on the brief) for plaintiff.

*J. A. Magoon* (*Magoon & Weaver* on the brief) for defendant.