ARIOCH W. ERICKSON *vs.* GEORGE B. H. MACOMBER COMPANY.

Suffolk.    January 17, 1912. — February 29, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DECOURCY, JJ.

*Contract,* Construction, Performance and breach, Building contract.  *Practice, Civil,* Ordering verdict.  *Waiver.*

The plan for a stable contemplated the keeping of horses on the third or stall room floor and the storage of carriages on the second floor immediately beneath it. A contract in writing for the building of the stable contained carefully stated specifications, as to the materials for and the manner of laying the stall room floor, which were intended by the owner to result in making that floor water-tight, and it was provided that the asphalt of the floor, laid in the manner required, was "to be guaranteed and kept in repair for two years," but the contract and specifications contained no provision that the floor should be water-tight. *Held,* that the construction of the contract and specifications was a question of law for the court, and that the contractor could not be held to guarantee that the mode of construction required of him would produce a water-tight floor.

In an action by the owner of a stable, constructed by the defendant under a contract in writing with the plaintiff and paid for in full by the plaintiff, for alleged improper performance of the contract, the jury in answer to special questions found that the driving of nails by the defendant through the asphalt covering of the stall room floor of the stable was a negligent and improper way of complying with the specifications of the contract and caused a leak which damaged property of the plaintiff to an amount named.  The judge ordered a verdict for the plaintiff, and reported the case for determination by this court with a stipulation that, if the ordering of the verdict was wrong, judgment was to be entered for the defendant.  It was assumed by this court that there was evidence warranting these special findings; but it appeared that no specific manner of fastening the stall room floor was provided for in the specifications, that the defendant had agreed to perform his work to the satisfaction of the plaintiff's architect and that the payments were to be made upon certificates of the architect.  There was evidence on which the jury could have found that the method of doing the work by driving the nails through the asphalt had been approved by the architect and that on his approval the work had been accepted by the plaintiff, so that any objection on this ground had been waived by him.  This issue was not submitted to the jury and they did not pass upon it in any of their findings. *Held,* that the special findings of the jury, which did not cover the whole case, were not sufficient to warrant the ordering of the verdict for the plaintiff, and that under the terms of the report judgment must be entered for the defendant.

CONTRACT for alleged breaches of a contract for the building of a stable on Brimmer Street in Boston. Writ dated November 1, 1908.

The plaintiff's declaration contained three counts. The first count alleged that the defendant wholly failed to construct the stall room floor of the stable according to the specifications, in that it did not cover the entire area of the stall room floor one inch thick with Warren's Kiola Asphalt Floor, nor put the same down in the best manner, nor underlay the same with two layers of best roofing paper acceptable to the architects. The third count alleged that the defendant guaranteed the floor for two years, but refused to perform its guaranty.

The second count was as follows:

" The plaintiff says that on or about March 22, 1906, he made a contract in writing with the defendant, whereby the defendant undertook in consideration of certain payments to be made by the plaintiff, to build a stable upon land at the corner of Brimmer, Chestnut and Byron streets, Boston, owned by the plaintiff, in a skilful and workmanlike manner, according to drawings and specifications incorporated in said contract. A copy of said contract and such of said drawings and specifications as are material to the issues raised in this action are annexed hereto and made a part of this declaration. In order that the floor of the stall room in said stable should be water-tight, and to prevent the leakage of drainage through the same, it was provided in said specifications that the entire area of stall room floor should be covered one inch thick with Warren's Kiola Asphalt Floor put down in the best manner, underlaid with two layers of best roofing paper acceptable to the architects, and guaranteed and kept in repair for two years from the time of completion of the work. And it was further provided in said specifications that the defendant should set the stall partitions and posts and finish off the partitions as shown on sketches forming a part of the drawings hereinbefore referred to, and copies of which are hereto annexed.

"The defendant thereupon proceeded to build said stable, and the plaintiff duly paid the defendant all sums to be paid under said contract, and did all other things which, by the terms of said contract, were to be done by him.

" But the defendant wholly failed to set the stall partitions and

posts and finish off the partition as shown on said sketches, in that it did not lay or bed the planking upon the asphalt as shown thereon, but on the contrary nailed said planking to and through said asphalt floor, and set said stall partitions and posts in a negligent, unskilful and unworkmanlike manner, and in other respects failed to set the same as shown on said sketches.

" By reason of the defendant's failure to set the stall partitions and posts as shown on said sketches, and the negligent, unworkmanlike and faulty construction thereof as above described, said asphalt floor was not water-tight; but as soon as said stable became used as such and said stall room occupied, large quantities of drainage from the stalls leaked through said floor and caused great damage to other parts of said stable and made the same untenantable and unfit for use.

" But the defendant, though requested by the plaintiff to reset said stall partitions and posts as shown on said sketches, or to repair said asphalt floor, neglected and refused so to do; and the plaintiff has been obliged to expend and has expended large sums of money to reset said stall partitions and posts, and make said asphalt floor water-tight and render the stable tenantable, and has suffered other and further damages in the premises."

In the Superior Court the case was tried before *Sherman,* J.

Among the provisions of the contract were the following:

" Article I.  The contractor shall and will provide all the materials and perform all the work for the Stable to be erected corner Brimmer, Chestnut and Byron streets, Boston, as shown on the drawings and described in the specifications prepared by Coolidge & Carlson, 22 Congress street, Boston, Mass., Architects which drawings and specifications are identified by the signatures of the parties hereto, and become hereby a part of this contract.

" Article II.  It is understood and agreed by and between the parties hereto that the work included in this contract is to be done under the direction of the said Architects, and that their decision as to the true construction and meaning of the drawings and specifications shall be final. . . ."

" Article IX.  It is hereby mutually agreed between the parties hereto that the sum to be paid by the Owner to the Contractor for said work and materials shall be $49,157.31 Forty-nine thousand, one hundred and fifty-seven 31/100 dollars, subject to additions

and deductions as hereinbefore provided, and that such sum shall be paid by the Owner to the Contractor, in current funds, and only upon certificates of the Architects, as follows:

" In monthly payments of eighty-five per cent of money due him at time of application for payment. Said payments shall be only for work actually done on the building and for material actually incorporated into the building.

" The final payment shall be made within thirty-three days after the completion of the work included in this contract, and all payments shall be due when certificates for the same are issued. . . .

" Article X. It is further mutually agreed between the parties. hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials."

The specifications, among other things, contained the following:

" All materials throughout the building are to be new and the best of their several kinds (unless otherwise specified) and the work executed in the best and most substantial manner and to the satisfaction of the architect."

The following was under the heading " Asphalt Floors."

" The entire area of stall room floor and where shown on second floor to be covered 1" thick with Warren's Kiola Asphalt Floor put down in the best manner under laid with two layers of best roofing paper acceptable to architects, aisles scored as shown, and to be guaranteed and kept in repair for two years from time of completion of work."

Here followed detailed specifications under the headings " Stall Floors" and " Laying."

It was not in dispute at the trial that the design of the stable contemplated the keeping of horses on the third or stall room floor and the storage of carriages on the second floor immediately beneath the stall room floor; that the area of the stall room floor was approximately seven thousand square feet; and that there were about one hundred stalls occupying about two thirds of the area of the floor.

The plaintiff offered to show that, after the floor was completed, it leaked. The defendant contended that the specifications did not

require that the floor should be water-tight, that if the floor was constructed in accordance with the plans and specifications, no liability against it could arise, whether the floor leaked or not, and asked the judge to rule as matter of law that the specifications did not call for a water-tight floor. The judge refused so to rule and, subject to an exception by the defendant, permitted the plaintiff to introduce testimony tending to show that after the asphalt floor and the stalls had been constructed the floor leaked from various causes.

The findings of fact which were warranted by the evidence are stated in the opinion.

At the request of the plaintiff the judge made the following rulings:

" The defendant was bound to do the work in a proper and workmanlike manner. If leaks were caused by driving nails through the asphalt, the jury would be warranted in finding that this was neither proper nor workmanlike, and if the defendant failed to repair the leaks, the defendant is liable.

" The defendant is not relieved from liability due to poor workmanship and materials by the fact that final payment under the contract was recommended by the architects, unless the architects knew or ought to have known of such poor workmanship and materials."

At the request of the defendant the judge made the following rulings:

" 4. In order to recover the plaintiff must show that the defendant failed to comply in some respect with the requirements laid down in the specifications relating to the stall room floors."

" 7. Neither the specifications nor the plans contain anything prohibiting the use of nails in fastening the posts and partitions of the stalls to the floor."

" 12. If the floor as planned by the architects was a faulty floor, the defendant is not liable to the plaintiff, if the floor was constructed in accordance with such faulty plan of the architect.

" 13. The defendant is not liable to the plaintiff for the negligence or incompetence of architects selected by the plaintiff."

" 16. The architect having issued a final certificate, in the absence of fraud or palpable error it is not open to the plaintiff to contend that the defendant failed to comply with the contract in relation to the original construction of the floor, but he is limited to his rights under the alleged agreement to keep in repair."

The defendant also asked the judge to make the following rulings:

" 2. On all the evidence the plaintiff is not entitled to recover on the second count."

" 5. The fact, if it be a fact, that the stall room floor leaked, or that the floor was not suited to the purpose it was intended for is of no consequence, if the floor was constructed in accordance with the plans and specifications.

" 6. The specifications did not require that the floor should be water-tight."

" 14. If the defendant failed in some particular to comply with the specifications, but the same damage to the plaintiff would have occurred irrespective of such failure, by reason of the defective design or plan of the architects, it is not liable to the plaintiff, for it cannot be said that the defendant's failure to comply with the specifications was the proximate cause of the damage.

" 15. Under the provisions of Article X of the contract, the final certificate of the architect is made conclusive evidence of the performance of the work."

The judge refused to make any of these rulings, and the defendant excepted.

The judge reported the case for determination by this court as follows:

" It appeared in evidence that after the asphalt floor had been laid, the stalls and flooring of plank were constructed and that the portion of the flooring which was specified to be stationary, was made so by means of nails or spikes which were driven through the asphalt to the wooden flooring beneath. The plaintiff contended, among other things, as set forth in its second count, that this method of making the floor stationary was negligent and not in accordance with the specifications.

" At the close of all the evidence, and over the defendant's objection and exception, I submitted the following questions to the jury, which were answered as follows:

" 1. ' Was the third floor laid according to the specifications? ' The jury answer: ' Yes.'

" 2. ' Was the work performed in the best manner as required in the specifications under the title asphalt?' The jury answer: ' Yes.'

"3. 'Taking the contract with specifications, and considering the use to be made of the second and third floors, where the stalls were, was the third floor to be made water-tight?' The jury answer: 'Yes.'

"4. 'Did the manner of nailing and spiking in the stalls cause leakage through the floor?' The jury answer: 'Yes.'

"5. 'Was that an improper and negligent way of complying with the specifications?' The jury answer: 'Yes.'

"6. 'Was the fact that the tarred paper was not turned up and mopped against the walls, etc., a failure to comply with the requirements in the specifications that the floor be laid in the best manner?' The jury answer: 'No.'

"7. 'Has the plaintiff suffered any damage?' The jury answer: 'Yes.'

"8. 'If so, how much?' The jury answer: '$1,800.'"

"I then ruled that the action could not be maintained on the first and third counts, which were thereupon waived by the plaintiff, and I directed the jury to bring in a verdict for the plaintiff in the sum of $1,800 on the second count.

"By consent of the parties I now report the case for the consideration of the full court. If my ruling directing a verdict for the plaintiff on the second count was wrong, or if any of my rulings or refusals to rule during the trial, excepted to by the defendant, were erroneous and prejudicial to the defendant on the issues raised under the second count, final judgment is to be entered for the defendant; provided, however, that if the only error prejudicial to the defendant shall be found to relate to the damages, then judgment is to be entered for the plaintiff in the sum of $864; otherwise judgment is to be entered for the plaintiff on the verdict."

*J. Noble,* for the plaintiff.

*E. K. Arnold,* (*W. B. Luther* with him,) for the defendant.

SHELDON, J. The question whether the defendant was required to make the third floor water-tight, depending entirely upon the construction of the language of the contract and specifications, was one of law for the court and ought not to have been left to the jury. *Globe Works* v. *Wright,* 106 Mass. 207, 216. *Goldstein* v. *D'Arcy,* 201 Mass. 312, 317. No doubt, if the jury had answered the question correctly, this would have been harmless error.

*Bouvé* v. *Cottle*, 143 Mass. 310, 315. But they did not do so. The contract and specifications stated carefully and particularly just what the defendant was required to do, and the details of the manner in which it was to do this. It was not bound to go further and bring about a result which it had not agreed to accomplish. Evidently the plaintiff had expected and intended to obtain a water-tight floor. But he selected himself the exact means and mode of construction upon which he relied for the accomplishment of his purpose, and stipulated that the defendant should follow precisely the course thus marked out for it. The defendant could not be held to guarantee that this mode of construction would produce a water-tight floor, or to go beyond what it had agreed to do for this end. *Burke* v. *Dunbar*, 128 Mass. 499.

The stipulation that the floor was "to be guaranteed and kept in repair for two years" does not import an agreement to keep it water-tight. This could not mean more than a guaranty that the work and materials which the defendant was to supply should remain in good order and condition for the specified time. Certainly it could not imply an agreement that the floor should continue to possess a quality which there was no agreement that it should have.

So far as the ordering of a verdict rested upon this ground, it cannot be sustained. On the contrary the judge should have ruled as requested by the defendant that it was not required that the floor should be water-tight.

But the defendant had agreed to execute all its work "in the best and most substantial manner and to the satisfaction of the architect." The jury have found that the defendant's conduct in driving nails through the asphalt was a negligent and improper way of complying with the specifications. We assume that this finding was made upon competent evidence and under proper instructions. If so, it settled the question that the defendant, in this respect at least, had failed to carry out its agreement. Unless there was some other issue that also must be passed upon, it would follow that the verdict for the plaintiff rightly was ordered, and only the amount of damages would remain open.

But there was another issue in the case. There was evidence that the architect had put in as clerk of the works one Willard, whose duty, according to the testimony of the architect, it was,

to the best of his ability, to look after the interests of the owner and to see that the work went on according to the plans and specifications. These was evidence that when the nails were driven into the asphalt to secure the board flooring, this method was approved by Willard, who said that he could see no other way of fastening the flooring. The manner in which the flooring should be fastened was not fixed by the specifications; but on the evidence another method might have been adopted which would not have made holes in the asphalt. The architect gave certificates for the earlier partial payments and for the final payment to be made under the contract, and the whole amount due thereunder was paid by the plaintiff to the defendant. There was evidence that the final certificate was given after some leaks had been discovered; and on all the evidence of the architect himself and that of Cross,* especially on the re-examination of the latter witness, it could have been found that before the architect in December, 1906, gave the certificate for the final payment, he knew that the nails had been driven into the asphalt and that this had caused at least one leak. The architect to be sure denied this, but it was nevertheless a question for the jury.

Under these circumstances and in view of the fact that no specific manner of driving the nails was provided for in the specifications, the jury might have found that the doing of this work in the way in which it was done had been approved by the architect, that on his approval the work had been accepted by the plaintiff, and that any objection on this ground had been waived and was not open to the plaintiff. The instructions given by the judge upon this issue were very meagre, but we need not consider whether they were open to exception. However this may be, the findings of the jury do not cover the issue thus presented, nor does it appear to have been passed upon at all.

It follows that the findings made did not cover the whole case. They were not sufficient to warrant the ordering of a verdict for the plaintiff. *Couilliard* v. *Eaton,* 139 Mass. 105. Under the terms of the report, judgment must be entered for the defendant.

*So ordered.*

---

\* This witness, who was called by the defendant, was the superintendent of a company that had charge of laying the asphalt floor.