ALFRED B. HARVEY *vs.* WILLIAM H. VARNEY & others.

Upon a bill in equity between partners to wind up the partnership, one of them who neglects or refuses to account fully for business of the firm, done by himself in a foreign jurisdiction, cannot, as a penalty, be denied his reasonable expenses of doing it, or sums otherwise owing to him from the firm, or be charged with interest with annual rests on actual or estimated balances in his hands; but in estimating the amount, expenses and profits of such business, and computing interest on such balances, if any interest thereon is chargeable, care should be taken, by making presumptions in favor of his copartners against him, to guard them from any injurious consequences of his concealment of facts.

Upon a bill in equity to wind up a partnership, a receiver will not be appointed to take possession of its assets in a foreign jurisdiction.

BILL IN EQUITY filed May 20, 1865, by a member of the partnership of Varney & Harvey, against the other members of it, namely, William H. Varney, Thomas J. Hunt, John Lane and Henry Hunt, to wind up the business of the firm, which was conducted at Boston and Abington in this Commonwealth, Evansville in Indiana, and New Orleans in Louisiana, and praying for the appointment of a receiver.

After the decision reported 98 Mass. 118, the cause was referred to Henry W. Paine, Esquire, as master, " to take a mutual account of all dealings between the plaintiff and the defendants of transactions of the parties in their partnership relations under the firm name of Varney & Harvey ; of the separate accounts of the several parties with each other and the partnership ; of the profit or loss of the business carried on by the partnership

in Boston and Abington; of the profit and loss of the business carried on by John Lane for the partnership account, or in which said partnership was interested, in New Orleans; of the profit or loss of the business carried on at Evansville, by Thomas J. Hunt and Peter Semonin, for account of or in which said partnership was interested; and of all other accounts, transactions or dealings connected with or growing out of the partnership relations between the parties, and of the doings, dealings, tradings and business carried on by any one of said parties as partners, or in relation to partnership property or funds, or in which the said partnership had any interest; and for the better discovery of the matters aforesaid, the parties are to produce before the said master, upon oath, all books of account, receipts, bills, vouchers and writings, in their custody or power, relating thereto, as the said master shall direct."

At October term 1869 the master made a report, of which the following are the material parts:

" For some time previous to the summer of 1861, the firm of Hunt & Lane, composed of Thomas J. Hunt and John Lane, two of the defendants, had been engaged in the business of manufacturing and selling boots and shoes. This firm became embarrassed. In August of that year, a new partnership was formed, composed of the said Hunt and Lane, Alfred B. Harvey, (the plaintiff,) and the two other defendants, William H. Varney and Henry Hunt, son of the said Thomas J. The partnership name was Varney & Harvey. The said Varney and Harvey had been employed as clerks by Hunt & Lane. When this partnership was formed, Hunt & Lane had goods on hand. These Varney & Harvey purchased, and gave their notes for them. At the same time, factors in San Francisco had goods in their hands consigned to them by Hunt & Lane. As these were sold, the proceeds were remitted to Varney & Harvey in Boston, and were used in their business. Neither Varney, Harvey, nor Henry Hunt, contributed any capital.

" In December 1861, Thomas J. Hunt went to Evansville, Indiana, where he established himself in the business of selling boots and shoes. He carried on this business till October 1862

The goods which he sold were shipped to him by Varney & Harvey, and the larger part of them made at their factory in Abington. In his account, he charges himself with proceeds of sales amounting in the aggregate to $34,395.51, and he credits himself with remittances, moneys paid Varney & Harvey on his account, expenses incurred in the prosecution of the business at Evansville, freights paid, loss by bad debts, and the amount of sundry notes made by Varney & Harvey. He claims to be allowed interest on these notes. The plaintiff contends that he is not, under the circumstances, entitled to interest. I have allowed him interest, and have charged him with interest on the balance of the account of the Evansville business in favor of the firm. In October 1862, Hunt sold to Peter Semonin his stock of goods in Evansville for about $10,000. For this he took Semonin's note; and it was then agreed between them that they should carry on the business in the name of Semonin and for joint account. At first it was understood that Hunt should have two thirds and Semonin one third of the profits. Very soon it was agreed that the profits should be equally divided between them. Hunt remained for two years at Evansville, aiding Semonin in the management of the business. In the fall of 1864, he returned to Massachusetts and commenced manufacturing boots and shoes for the house at Evansville. The sale was made with the knowledge of the partners; but they did not learn from Hunt the terms of the sale or the fact that he was to be a partner with the purchaser. Hunt swears, that, though he was engaged for two years in the business with Semonin, he did not know what profits were made during that time, though he thought some profits were made; that he has since the fall of 1864 twice visited Evansville, and has seen Semonin in Boston several times, but has received no profits and never ascertained what profits had been made, nor asked to be informed. The master is satisfied that large profits have been made, but has been furnished with no proof which would enable him to fix the amount.

" The defendant Lane went to New Orleans in September 1862. Varney & Harvey consigned to him boots and shoes,

which Lane procured to be sold by Zanoni Stearn till January 1863, paying a commission of five per cent. He settled with Stearn, and was satisfied, as he testifies, that Stearn accounted to him for all the sales he had made. But he is unable to say whether he received from Stearn a detailed account of his sales · and if he did, he swears that he cannot produce it. He thinks there was a profit, but cannot say how much. After this, he hired a store, employed clerks, and superintended the business himself. Varney & Harvey continued to send him goods, down to the dissolution of the firm by the withdrawal of Harvey in February 1865. He made remittances in gold and treasury notes, and in drafts. He purchased hides, cotton, sugar and molasses, which he shipped to Varney & Harvey. The firm charged him with the freight and other expenses, and gave him credit for the proceeds. The goods which he shipped to Varney & Harvey, and which they sold, amounted at the sales' prices to $185,779. He says that he is unable to state what these articles cost him, and that if he had ever any memoranda of the cost, he has lost and cannot produce them. Whether anything was made on these shipments, taken as a whole, is left to conjecture. It was found that on some of these shipments profits were made. [Here the master enumerated seven different shipments, and the profits made thereon.] The aggregate of these profits I have charged to Lane. But I have not charged him with profits on any other shipments, because it was not proved what profits, if any, were made. He testifies that it is not in his power to state what profits were made on the boots and shoes which he sold. He wrote to the firm from time to time, urging shipments, saying there was a demand for their goods, and that he was selling at a profit of from twenty-five to fifty per cent. Several letters of like import were introduced in evidence. The numbers of the cases of goods consigned by the firm are set down in the invoices, with the prices set against them. Three books only (though I am satisfied that other books were kept) were produced by Lane, which were, as he said, in the handwriting of one or another of his clerks. These books purport to carry out against each case, by its number, the price for

which it was sold. These books Lane said he believed to be correct. The first began May 1, 1863, and closed August 11 1863. The second began November 26, 1863, and closed March 4, 1864; and the third began June 1, 1864, and closed October 19, 1864. The aggregate of the sales shown by these books is $196,061.78. The aggregate of the cost as shown by the invoices is $150,487.63. The average profit shown on the sales contained in the first book is twenty-eight per cent.; in the second is thirty-one per cent.; and in the third is thirty-two per cent. The average profit on the sales in the three is thirty-one per cent. Whether profit was greater or less on the sales which do not appear in these books, it is impossible to determine with any degree of certainty. There was no satisfactory evidence of any decided change in the state of the market. The aggregate of the goods shipped by the firm to Lane at the invoice prices is $403,001.72. By the burning of one vessel, the sinking of another, and the capture of a third, goods amounting at invoice prices to $12,727.69 were lost; and a case of goat skins, valued in the invoice at $336.77, shipped November 29, 1862, was not received; the aggregate loss being $13,064.46. On February 15, 1865, Lane had on hand goods which at the invoice prices amounted to $26,536.33. An account of the sales of these goods has been produced, and no profit would appear to have been realized on them, and I am not satisfied that they were sold at a loss. Deducting from the total of goods consigned the goods which were lost and the goods still on hand February 15, 1865, it appears that Lane had received from the firm goods at invoice prices amounting to $363,400.93. I find that he nade upon these goods a gross profit of thirty-one per cent., amounting in all to $112,654.27. He paid for freight $11,496.71. He testifies that he kept no account of expenses, and he produces none. He hired a store, and employed clerks, and kept his stock insured against loss by fire to the amount of $25,000, for which he paid a premium of two per cent. He made bad debts to the amount of $4706.90. He paid taxes and drayage, he says, but he does not say how much or furnish any means of approximating the amount. I have allowed him, for hire of

the store, $8000; for clerk hire, $9000; for payments for insurance, $1500; for bad debts, which he says are not collectable, $4706.90. But as he produces no evidence of what he paid for drayage or taxes, I do not allow any claim for them."

" Thomas J. Hunt holds sundry notes of the firm, amounting, without interest, to $8678.49; and Lane holds sundry notes of the firm, amounting, without interest, to $7137.71. Lane claims to be allowed interest on these notes from their maturity. The plaintiff contends that, as he has neglected to keep and produce proper books of account, which should show the profits made as well on the goods bought by him in New Orleans and shipped to Boston, as on the goods shipped by Varney & Harvey and sold by him in New Orleans, interest on these notes should not be allowed. But with hesitation I have allowed the claim, and I have serious doubts whether he should be credited with the principal of these notes; but the court will have the facts upon which these questions may be decided."

To this report both parties alleged exceptions. The plaintiff's exceptions were as follows:

" *First.* It appears by the evidence, that Thomas J. Hunt has the means, and is the only person having the means, of knowing the business at Evansville, carried on under the name of Semonin. He ought not therefore to be allowed to receive out of the assets of the firm the amount due him on notes reported by the master as held by him against the firm.

" *Second.* Each of the defendants should be enjoined from collecting any of the profits made in the business at Evansville, conducted under the name of Semonin; and a receiver should be appointed to take possession of the assets in which the firm are interested in Evansville, adjust and settle the accounts, collect all the assets and distribute the same under direction of the court.

" *Third.* It appearing that Lane wilfully and negligently refuses to furnish information in regard to the profits made in the business at New Orleans, he ought to be charged with interest with annual rests; and he ought not to be allowed to recover or receive any of the amounts found due from the firm to him un-

der the master's report, either on the notes held by him or on accounts against the firm.

" *Fourth.* On the goods shipped to Boston from New Orleans by Lane, the firm are entitled to an allowance, not simply to an amount which the plaintiff has been enabled to show has been actually received, but Lane should be doomed to pay as profit a percentage on the whole amount of goods shipped, based upon any specific profit shown."

The material exceptions of the defendants were as follows:

" *First.* The prayer of the bill is for a final settlement of the accounts of the partnership, and the order referring the cause to the master required the taking of an account of all dealings of the partnership, and of the members of the same, in which the partnership was interested; and it appears by the report of the master, that a large amount of the property and assets of the firm are outstanding and uncollected in the hands of Semonin, and no proper, complete or final account can be taken, nor any final settlement between the parties be made, nor any final decree be made in the cause, until such property and assets shall have been realized and collected.

" *Second.* Because it appears by the report of the master, that debts to a considerable amount against the partnership are outstanding and unpaid, and, until such debts are paid, no proper, complete or final account can be taken, or final settlement be made between the parties, or any final decree be made in the cause."

" *Fourth.* Because the master has charged Thomas J. Hunt with interest upon the balance alleged to be due from him to the firm of Varney & Harvey, from October 1862 to the date of the decree.

" *Fifth.* Because the master has charged John Lane with a profit of thirty-one per cent. upon the goods consigned to him for sale by said Varney & Harvey, and has not allowed or given him credit for taxes and drayage.

" *Sixth.* Because the master has charged John Lane with interest upon the balance alleged to be due from him to said firm to the date of the decree.

" *Seventh.* Because the master has charged John Lane with profits alleged to have been made upon goods and merchandise sent by him from New Orleans to Varney & Harvey."

The case was reserved by *Gray,* J., upon the master's report and the exceptions, for the consideration of the full court.

*E. Avery,* for the plaintiff.

*H. C. Hutchins,* for the defendants.

CHAPMAN, C. J. The object of the plaintiff's bill is, to procure a settlement of the affairs of a partnership which has been formed and managed in a very loose manner. The cause has been referred to a master, to whose report several exceptions are taken by each party.

The partnership was formed in this state in August 1861, and its business was at first carried on in Boston and Abington. In December 1861, the defendant Thomas J. Hunt went to Evansville, Indiana, and established a branch of the business there; and his son, Henry Hunt, came into the firm. They sent boots and shoes to Thomas J. Hunt, and he continued the business till October 1862, when he sold out his stock of goods to Peter Semonin for $10,000. But he and Semonin have since carried on the business on their joint account. It has already been decided that the interest of Hunt in that business belongs to the firm. 98 Mass. 118. Of course, it was his duty to keep proper accounts of this business, and render them at reasonable times to his copartners. Story on Partnership, (6th ed.) § 181. This duty was the more important, because he had been intrusted by them to manage their affairs at a distant place, beyond the limits of the Commonwealth. We cannot appoint a receiver to take charge of the concern as against Semonin, nor would a receiver appointed by us have any power to act in a foreign jurisdiction. *Booth* v. *Clark,* 17 How. 322. The obliligation of Hunt is similar to that of an agent, in respect to rendering accounts; and the account should be so made up in this case as to protect his copartners from being injured by his fraud or neglect. Story on Agency, (7th ed.) §§ 203, 204, 332, 333. *Dodge* v. *Tileston,* 12 Pick. 328.

Presumptions are against one who is bound to account and neglects to do so; the court inquires strictly into his irregularities, and deals with him severely. *Gray* v. *Haig*, 20 Beav. 219. When business is done at different places, it is the duty of each partner to furnish to the other all their accounts at the place where he resides, and endeavor to adjust them, and pay the balance when ascertained. *Beacham* v. *Eckford*, 2 Sandf. Ch. 116. If the neglect of a party has rendered accounts intricate, his claim to interest on a balance is sometimes denied. *Boddam* v. *Ryley*, 1 Bro. Ch. 239; *S. C.* 2 Bro. Ch. 2. In *Walmsley* v. *Walmsley*, 3 Jones & Lat. 556, a partner having possession of the partnership books fraudulently refused to produce them, and the master was unable to state the accounts. He charged the partner ten per cent. as presumed profits. His report was objected to on that account, but Lord Chancellor Sugden said the master had acted quite correctly, and if he had charged twenty per cent. he would have confirmed the report.

These authorities indicate a disposition of courts of equity to protect the firm from losses by reason of the neglect or refusal of a copartner to render an account of matters that have been specially intrusted to him, and they also indicate the means by which a master may make up an account in such a manner as to prevent the delinquent partner from making a profit by his delinquencies. But the plaintiff's exception to the report, because the master has credited Hunt with notes of the firm which are due to him, is not valid. The account cannot be properly made up without giving him credit for all items that are justly due to him. His refusal to account may raise presumptions that he has made profits; and of the extent to which such presumptions authorize charges to be made against him, the master is, in the first instance, the proper judge as to this, being careful to protect the firm from loss in consequence of his concealment of facts.

The second exception alleged is not an exception in substance and requires no separate consideration.

The third and fourth exceptions relate to the account of the defendant Lane, who carried on a branch of the business in New

Orleans. His obligation to account to the firm is not less stringent than that of Hunt. These exceptions must be sustained, so far as they relate to charging him with profits on the principles stated above; but credit should also be given him for all reasonable expenses, as well as for other items that appear to be due to him. It does not appear from the report, that interest should be charged to him with annual rests. Whether it should be thus charged must depend upon whether he properly retained as a partner the balance which had come to his hands, or upon what use he made of it. The general rule is, that where there is no neglect, and no profit is made from the money retained, the partner holding it is not liable for interest upon it. But in determining this matter, presumptions should be made against a partner who renders no account.

The defendants' exceptions relate to matters which are governed by the principles stated above. Each party should be credited with expenses reasonably incurred in the prosecution of the business, and proper charges should be made to him, so that he may not make a profit by not accounting. The report should be recommitted to the master, in order that a full statement of the accounts may be completed; and upon the confirmation of his report, a receiver may be appointed, if necessary, who shall receive and apply to the payment of the debts due from the firm such sum as may be needed for that purpose.

*Ordered accordingly.*

After this decision, the case was settled by the parties without a further hearing.