EZRA N. SOMERS, TRUSTEE, vs. SARAH M. JOYCE AND ANOTHER, ADMINISTRATORS.

A and B entered into a contract by which A " leased demised and to farm let" to B a farm for three years, and B agreed to furnish all the labor necessary for its cultivation; each party to furnish half of all the necessary stock and tools, and two tons of plaster annually; " the net proceeds, income and increase of the farm " to be annually divided equally between them. Held, that the contract was neither strictly a lease, nor a hiring of labor, but was of a mixed nature, and that the products of the farm were the joint property of the parties.

And held, that the joint accounts between the parties were to be settled as partnership accounts are settled and the property treated like partnership property.

The tenant sold and appropriated to his own use a considerable amount of the joint property, after which he went into insolvency. The landlord died and his administrators sold the remainder of the joint property and were holding the proceeds. Held, that the trustee in insolvency was not entitled to take these proceeds out of the hands of the administrators, and leave them to present their claim against the insolvent estate of B for the proceeds of the joint property sold by him.

B and his trustee had no individual and separate interest in the property or its proceeds until the just claims of the estate of A upon the joint property were satisfied.

The administrators of A were not right, strictly speaking, in selling the joint property. The right of sale, in strict law, belonged to the survivor, and the proceeds of the sale by the survivor would have belonged in equity to the administrators. But substantial justice having been done equity would not regard the irregularity.

OPINION of Hon. O. S. SEYMOUR, as arbitrator in a case between the trustee in insolvency of John H. Bowers and the administrators of Z. Joyce, deceased. The facts are sufficiently stated in the opinion.*

In April, 1871, Joyce, the intestate, made a contract with John Bowers, of whose insolvent estate the plaintiff is trustee, the parts of which contract material to the present inquiry are as follows :—Joyce " leases demises and to farm lets " to Bowers for the period of three years a farm in Brookfield with

---

* This case and the next following are decisions made by Hon. O. S. SEYMOUR, late Chief Judge of the Supreme Court, sitting as an arbitrator. As they involve interesting questions of law, and were made after full argument and upon careful consideration, the reporter feels confident that the profession will be glad to have them thus preserved, and in view of the high judicial character of the late Chief Justice, will regard them as authority.

dwelling house, barns, &c., (the dwelling house to be occupied in part by Bowers,) upon the terms that Bowers shall do and furnish all the labor necessary for the proper cultivation and management of the farm, that each of the parties shall furnish and provide one-half of all the stock, farming implements, milk cans and tools which may be necessary, and two tons of plaster annually. The contract then provides that "the said parties shall annually or oftener, if they shall so agree, divide the net proceeds, income and increase of said farm, between them, share and share alike."

Contracts similar to this are very common, and have given rise to much litigation.

In some cases courts have given prominence to the words "demise and to farm let," and have held that the contract is a lease, and that the lessee as such owns the crops, and that the lessor's interest in the crops and proceeds of the farm is in the nature of a mere claim on them as rent. This construction is however now generally repudiated, except where the terms of the contract clearly indicate that the parties intend to come into the relation of mere lessor and lessee.

Other cases hold that the contract is to be regarded as a hiring of service, the occupant receiving a portion of the proceeds as payment for his labor. This construction if carried out to its letter leaves the crops in the ownership of the landlord, until the laborer's share is divided off to him.

It is obvious that the contract may be so drawn as to be a mere lease, or on the other hand may be so drawn as to be a mere hiring of the labor of the occupant. Each case must stand upon the terms used.

This whole subject is elaborately and satisfactorily discussed by WOODRUFF, J, in the case of *Taylor* v. *Bradley*, 39 N. York Reports, 129.

In general, and certainly in the case under consideration, the contract is neither strictly a lease nor strictly a hiring of labor. It is of a mixed nature and the products of the farm are clearly the joint property of the parties. They are produced by the tenant's labor upon the landlord's property, and their joint farming implements, joint manure, and joint stock,

contribute to make the crop. The provision for *division* of the proceeds implies that before division they were joint owners of the things to be divided.

The proceeds of the farm are then a joint fund, out of which the tenant is to be paid for his labor and for what he has furnished towards the production of the crops, and out of which the landlord is to receive pay for the use of his land and for what he has furnished toward the production.

In this case the tenant sold and appropriated to his own use a considerable amount of the joint property, for some of which he has properly accounted to Mr. Joyce, but for some of which he has not accounted, so that at the death of Mr. Joyce, Mr. Bowers was considerably indebted on joint account.

After Mr. Joyce's death his administrators sold joint property, some before Mr. Bowers's assignment in bankruptcy and some since, and have in their hands the proceeds of these sales.

The question submitted to me is, whether the trustee is entitled to take out of the hands of the administrators the proceeds of the joint property thus sold by them and leave the administrators to present their claim against the estate of Mr. Bowers for the proceeds of the joint property sold by him and take a dividend upon such claim.

My opinion and award is that the joint accounts between the parties growing out of the contract are to be settled as partnership accounts are settled and the property treated as partnership property is treated.

The rule of law governing partnership accounts is well stated by Judge Hosmer in the case of *Canfield* v. *Hard*, 6 Conn. R., 184. He says:—" It is an established principle that·nothing can be considered as the exclusive right of one partner but his proportion of the funds upon a balance being struck between all the partners ; in other words that one partner has no exclusive right to the partnership funds, until his co-partner is paid all the demands he has in that character on the partnership."

Mr. Joyce's administrators had an equitable lien upon the joint property, and Mr. Bowers and his trustee have no indi-

vidual and separate interest in the property or its proceeds, until the just claims of the estate of Mr. Joyce upon the joint property are satisfied.

I suppose from what was said, that all the joint property has been sold, either by Mr. Bowers or by the administrators. If that be so, then if Mr. Joyce's estate has received more than its share of the proceeds of the property the estate is accountable to the trustee for such surplus; and if Mr. Bowers has received more than his share he is debtor to the administrators for such surplus.

In thus treating the account between these parties as a partnership account, I do not mean to say that they were to all intents and purposes partners. Under the contract they were not necessarily partners. They might have conducted the business under the terms of the writing so as to be mere tenants in common of the proceeds of the farm. Each party might have furnished stock and farming utensils for the use of the farm, retaining an individual ownership in the stock and utensils thus furnished, but in fact it appears that they jointly purchased stock and tools and milk cans and sold the produce of the farm jointly, dividing net proceeds, which net proceeds were in truth profits of the joint business. I am therefore inclined to think they may have been truly partners. The inclination of courts is however against construing these agricultural contracts as partnerships to the full extent of authorizing the parties to bind each other; and for the purposes of justifying me in coming to the conclusion I have in regard to the rights of the parties in the joint property, it is not necessary to hold the parties to be partners. Mere joint owners are in certain cases subject to the same rules as partners in respect to the joint property. If, for instance, my neighbor and myself own a pair of fat oxen in common and I butcher and consume one of them, and then, being insolvent, make an assignment in trust for my creditors, my assignee could not justly claim an undivided half of the remaining ox and leave my joint tenant to present his account to commissioners for a dividend, and yet this is precisely in effect the claim of the trustee of Mr. Bowers in the case submitted to me.

It is true, the administrators of Mr. Joyce, strictly speaking, were not right in selling the joint property. The right of sale, in strict law, belonged to the survivor, and the proceeds of the sale by the survivor would have belonged in equity to the administrators; but in equity the irregularity is of no moment. Substantial justice was accomplished by the administrator's sale.

My award therefore is, that the trustee has no just claim against the administrators for the proceeds of the sales by them of the joint property, unless such proceeds exceed the amount which upon the final settlement of the joint accounts appears to be due to Mr. Joyce's estate; and that for the purposes of adjusting these accounts Mr. Joyce and Mr. Bowers are to be treated as partners in the business of cultivating the farm and disposing of its proceeds.

ORIGEN S. SEYMOUR,
*Arbitrator.*

LITCHFIELD, April 16, 1874.