EDMUND F. WALSH vs. ATLANTIC RESEARCH ASSOCIATES, INC., & others.

Middlesex. November 7, 1946. — February 26, 1947.

Present: FIELD, C.J., LUMMUS, QUA, & SPALDING, JJ.

Contract, Of employment, Performance and breach, Termination, Construction. Agency, Agent's compensation, Agent's duty of fidelity. Equity Jurisdiction, Accounting, Plaintiff's clean hands. Partnership, What constitutes. Equity Pleading and Practice, Parties. Trustee Process. Words, "Material default."

Under provisions of a contract of employment that the employee was to devote all his time, attention and energy to the duties of the employment; that his entire compensation was to consist of certain rights to share in the profits of the employer's business and to have an account kept during the employment and adjusted at the termination thereof; for termination of the employment in various contingencies, including default by either party; and that upon "any" termination the balance due the employee upon the adjusted account should be paid to him by the employer forthwith, the employee was not precluded from obtaining in equity an accounting of the balance of the adjusted account upon termination of the contract by his justifiable discharge for having secretly and wrongfully become connected with a competitor of his employer, either on the ground that his wilful and material breach of the contract barred him from relief or on the ground that he came into court with unclean hands or on the ground that as an unfaithful servant he had forfeited his right to compensation; but in the accounting he would be chargeable with the entire amount derived by him from his connection with the competitor and with any damages arising from his breach of the contract.

A certain arrangement between a corporation and the manager of one of the divisions of its business, although closely resembling a partnership in many particulars, including the manager's right to a share of the profits of the division as his entire compensation, was nevertheless an employment of the manager by the corporation and not a partnership.

The bill in a suit in equity commenced by trustee process need not name the trustee as a defendant where no relief against him other than as such trustee is sought.

BILL IN EQUITY, filed in the Superior Court on July 30, 1945.

The suit was heard by Cabot, J., who filed "Findings, Rulings and Order for Decree." The evidence was not

reported upon appeal by the plaintiff from a final decree dismissing the bill.

*C. C. Worth*, (*C. B. Cross* with him,) for the plaintiff.

*B. H. Loewenberg*, (*C. R. Cabot* with him,) for the defendant Atlantic Research Associates, Inc.

QUA, J.   This is a bill for an accounting between the plaintiff and Atlantic Research Associates, Inc., hereinafter called the defendant, and for payment to the plaintiff of the sum found to be due him, all on account of a contract between the plaintiff and the defendant dated June 3, 1943, whereby the defendant employed the plaintiff for an indefinite period as general manager of the defendant's "mechanical division."   From a final decree dismissing the bill the plaintiff appeals.

By the terms of the contract the plaintiff was "to take and have charge of this division, subject to such general policies and within such budgets as the management and board of directors of the company [defendant] may from time to time establish."   The defendant was to "have the sole say as to the business to be conducted by the mechanical division, and as to the receipts and disbursements to be allocated to it," provided that such allocations should be in accordance with the defendant's regular accounting practices and not contrary to the contract.   The plaintiff was to "devote all of his time, attention and energy to the duties of this employment" and was to "perform his duties to the best of his abilities" and to "use his best efforts" to contribute ideas, inventions and improvements for the use of the "mechanical division."   "As his only compensation" the plaintiff was to share the net profits and net losses of the "mechanical division" equally with the defendant.   Net profits or losses were to be computed not less frequently than once each calendar quarter.   The method of calculating net profits was precisely stated.   The defendant was to set up on its books an account with the plaintiff from which the plaintiff would "be permitted to draw weekly a reasonable percentage of his share of net profits up to a maximum of one hundred dollars ($100) a week."   The plaintiff would also be permitted not oftener

than once in each calendar quarter "to withdraw so much of his credit balance as exceeds 50% of the book value of the assets of the mechanical division (other than cash) including without limitation machinery, equipment, inventory and accounts receivable . . . as the parties may determine by mutual agreement." This account between the plaintiff and the defendant was to be "subordinate" to the claims of all creditors of the defendant.

The provisions for termination of the contract are important and are here quoted in full. "7. Either party may terminate the employment on the last day of any calendar month by not less than six months' previous written notice given to the other. Either party may terminate the employment forthwith upon material default by the other. The employment shall terminate without action by either of the parties in any of the following events: (1) If Walsh dies or by reason of incapacity or otherwise is unable to perform his duties for a period exceeding ninety consecutive days. (2) If the company sells substantially all of its assets, dissolves, or if bankruptcy or receivership proceedings are commenced by or against it. 8. Upon any termination of Walsh's employment his account shall be adjusted, as of the date of termination, by a credit in the amount of one half of any profit over book value realizable from the assets of the mechanical division or by a debit in the amount of one half of any loss so realizable, and the adjusted amount, if a credit, shall forthwith be paid Walsh by the company or if a debit, shall forthwith be paid to the company by Walsh. In |the event of dispute as to the gain or loss so realizable, final settlement of the account shall be deferred until the actual value of the disputed item or items has been determined by collection, sale or payment. Payment as provided in this paragraph shall discharge all obligations of the parties to each other hereunder."

The trial judge made detailed findings of fact which in substance are these: On June 3, 1943, the defendant was engaged primarily in the manufacture, development and sale of chemical products. It had also a small division of its business engaged in the work of a machine shop. It was

anxious to increase the operations of its machine shop, and to that end it employed the plaintiff. The plaintiff "devoted long hours and great attention with outstanding success to the operations of the mechanical division of the defendant, and through his efforts the earnings of that division rose from almost nothing to a total of $116,983.81 for the period from the date of the contract to October 31, 1944. However, on February 7, 1944, the plaintiff entered into a partnership with four other persons known as the Cushing Stearns Machine and Tool Company under the provisions of which he was entitled to receive nine per cent of the profits of the partnership and his duties were set forth as engineering consultant to it. This partnership was engaged in substantially similar activities to those of the mechanical division of the defendant . . . . The two companies were to a substantial degree economic competitors of one another, and the principal buyer of the goods of each was the Raytheon Manufacturing Company of Waltham, Massachusetts. The plaintiff did not devote very much time to the affairs of the Cushing Stearns partnership and such time as he did devote was primarily at night after the normal working hours in the defendant's mechanical division were over. The plaintiff failed to disclose to the defendant that he had joined this partnership and his failure to disclose his connection was not by inadvertence but on purpose. On the evidence in this case it is virtually impossible to determine what, if any, loss the mechanical division of the defendant suffered by reason of the competition of the Cushing Stearns partnership of which the plaintiff was a member, but I do find that if there was any financial loss it was not in any substantial amount. The plaintiff continued to be a member of the Cushing Stearns partnership until it was dissolved on June 14, 1944. The plaintiff received from this partnership the sum of $1,630.74. The defendant did not learn of the plaintiff's connection with the Cushing Stearns partnership until late in October of 1944, at which time it discharged the plaintiff from its employ."

The judge further found that "the plaintiff's secretly joining the Cushing Stearns partnership was a wilful and

material breach of his contract with the defendant," and
ruled that the plaintiff had "thereby forfeited his right to
relief in a court of equity."   He found, however, that the
defendant had paid the plaintiff $15,500, and that if the
plaintiff was entitled to recover at all, his "damages," that
is, the balance still due to him, calculated according to
the terms of his contract with the defendant, would be
$42,991.90.

The defendant contends that these findings were not made
under the statute (G. L. [Ter. Ed.] c. 214, § 23, as appearing
in St. 1945, c. 394, § 1), and that it is not stated that they
comprise all the material facts upon which the decree was
based.   *Birnbaum* v. *Pamoukis*, 301 Mass. 559.   *Turner* v.
*Morson*, 316 Mass. 678, 680.   *Fields* v. *Paraskis*, 318 Mass.
726.   The findings were carefully prepared and are presented
in adequate detail to disclose the factual basis of the judge's
action.   If they cannot be treated as the equivalent of find-
ings of material facts under the statute, which we do not de-
cide, they are at least sufficient to disclose error, as we
think, in the judge's ruling that the plaintiff forfeited his
right to relief by his connection with the Cushing Stearns
partnership.   The error cannot be considered harmless, since
in all probability it was the very basis of the decree.

We do not doubt that the plaintiff's conduct was a breach
of his agreement to "devote all of his time, attention and
energy to the duties" of his employment by the defendant.
Neither do we doubt that this breach, involving as it did a
breach of good faith as well as of a term of the contract,
was a "material default" within the meaning of those
words as used in the contract such as justified the defendant
in terminating the employment in accordance with article
7 as hereinbefore set forth.   See *Lindsay* v. *Swift*, 230 Mass.
407, 412.   But whether the plaintiff should be deprived of
all of his earnings during the continuance of his employment
beyond the $15,500 which he has received is a matter that
requires further careful consideration.

We are not sure upon what ground the judge reached his
conclusion.   He may have proceeded upon the ground
that the plaintiff did not come into a court of equity with

clean hands, or upon the ground that as an unfaithful fiduciary he had forfeited his right to compensation, or the decree may have been rested upon the doctrine held in this Commonwealth that a wilful default in the performance of a stipulation, even though not going to the essence of the contract, bars all recovery, *Sipley* v. *Stickney*, 190 Mass. 43, 46, a doctrine which, as a rigid rule of law, has been criticized as too severe. Williston on Contracts (Rev. ed.) § 842, note 4.

Before dealing with these several grounds upon which the decree below may have rested it may be well to remark that this does not seem to be a case in which the plaintiff's compensation can be apportioned between the time during which he was faithful and the time during which he was unfaithful. By the terms of the contract he was to be paid no sum of money nor any share of the profits for any specified period of time short of the whole period of employment. The total amount of his compensation would never be ascertained until the employment was ended, and until then whatever he received was simply chargeable to his account.

We take up first the application of the doctrine of *Sipley* v. *Stickney*, 190 Mass. 43. In the earlier cases this doctrine seems to have been applied where the plaintiff had voluntarily failed to complete a piece of work which he had contracted to perform (see *Homer* v. *Shaw*, 177 Mass. 1, 5, and cases cited), and it has always found its principal application in preventing recovery based on contracts to erect buildings or other structures where the plaintiff had intentionally departed from the terms of the contract. It will not be necessary to cite the many cases of this kind. A fair example is *Glazer* v. *Schwartz*, 276 Mass. 54, 57. Among the latest are *Russo* v. *Charles I. Hosmer, Inc.* 312 Mass. 231, 232–233, and *LeBel* v. *McCoy*, 314 Mass. 206. But the rule of *Sipley* v. *Stickney* has not been limited to such cases. It has been applied generally. *Mark* v. *Stuart-Howland Co.* 226 Mass. 35, 43. *Jewett* v. *Warriner*, 237 Mass. 36. *Cobb* v. *Library Bureau*, 268 Mass. 311. *Jackson* v. *Boston Safe Deposit & Trust Co.* 310 Mass. 593, 595.

In the present case we incline to the view that the peculiar

terms of the contract itself save the plaintiff from forfeiture of his earnings by reason of the rule of *Sipley* v. *Stickney*. Article 7 provides that "Either party may terminate the employment forthwith upon material default by the other." This is followed by the provision of article 8 that "Upon *any*[1] termination" of the plaintiff's employment his account shall be "adjusted" by a credit of one half of any profit over book value realizable from the assets of the mechanical division or by a debit in the amount of one half of any loss so realizable, "and the adjusted amount, if a credit, *shall forthwith be paid Walsh by the company*[1] . . . ." It is plain that the parties intended that a "material default" should be a ground for termination, and they must have intended to include in such defaults intentional ones and those made in bad faith. But they did not stop there. They went on to provide exactly what should be done upon *any* termination. They provided that the adjusted "amount" of the plaintiff's account with the defendant, if that "amount" was then in the form of a credit to the plaintiff (as it was) and not of a debit against him, should be paid to the plaintiff by the defendant. They did not make such payment dependent upon the plaintiff's good faith. They used language equally applicable where the termination was a consequence of the plaintiff's default in bad faith. If the parties are to be bound by the literal meaning of the words used the defendant must allow the plaintiff the amount of the credit in his favor.

We have less hesitancy in concluding that this is what the contract means because the whole scheme of the contract seems to have been that out of net profits an account should be set up for the plaintiff's benefit which should represent in substance his interest in the business. He could draw sums from this account from time to time, but under the terms of the contract he could never draw the entire credit balance in his favor until the termination of the employment and then, for whatever reason the employment terminated, he could withdraw all of that which was regarded as sub-

---

[1] Emphasis supplied.

stantially his. Although he had no actual legal title to any of the assets of the defendant, it was even thought necessary to provide that his account should be "subordinate" to claims of the defendant's creditors. The whole arrangement closely resembles a partnership between the plaintiff and the defendant, although we do not think that an actual partnership was intended for several reasons. The corporate defendant could not be a partner with an individual. *Rosenblum* v. *Springfield Produce Brokerage Co.* 243 Mass. 111, 115, 119. The language throughout the agreement was that of employment and not of partnership. The plaintiff had no title to or lien upon assets or profits but had only a credit and debit account, and no provision was made for contributions to capital, payment of the defendant's existing debts, and other matters which in the circumstances would naturally have been covered if a partnership had been intended. Moreover, the arrangements for control were scarcely those to be expected in a partnership and were appropriate to an employment with large powers of agency. See *Dickinson* v. *Robbins*, 12 Pick. 74; *Denny* v. *Cabot*, 6 Met. 82; *Bradley* v. *White*, 10 Met. 303; *Pratt* v. *Langdon*, 12 Allen, 544; *Ryder* v. *Wilcox*, 103 Mass. 24; *Estabrook* v. *Woods*, 192 Mass. 499; *Rosenblum* v. *Springfield Produce Brokerage Co.* 243 Mass. 111; *Mitchell* v. *Gruener*, 251 Mass. 113; *Seemann* v. *Eneix*, 272 Mass. 189; *Boyer* v. *Bowles*, 310 Mass. 134, 138; G. L. (Ter. Ed.) c. 108A, §§ 6, 7. We do think, however, that the parties intended that as between themselves the plaintiff should have contract rights approximating the rights of a partner so far as should concern the accrued profits shown on his account. See *Stone* v. *Wright Wire Co.* 199 Mass. 306, 308–309; *Rosenblum* v. *Springfield Produce Brokerage Co.* 243 Mass. 111, 115–116; *Somers* v. *Joyce*, 40 Conn. 592; *Elliott* v. *Le Page*, [1929] 3 D. L. R. 912. A partner does not lose his rights in the accrued profits of a firm by reason of breaches of the partnership articles, whether or not committed in bad faith, although of course he will be subject to charges for all unexcused breaches in the final accounting. *Shulkin* v. *Shulkin*, 301 Mass. 184, 192–193. *Harvey* v. *Varney*, 104 Mass.

436, 444. G. L. (Ter. Ed.) c. 108A, § 21. *Martin v. Burris*, 57 Cal. App. 739, 742. *Lanpher v. Warshauer*, 28 Cal. App. 457. *Kaufman v. Catzen*, 81 W. Va. 1. *Karrick v. Hannaman*, 168 U. S. 328. Lindley on Partnership (10th ed.) at page 587. We see no reason why the parties could not bring about a similar result so far as affects this case by including provisions in their contract which, though not creating a partnership, would for specified purposes treat the credit balance in the plaintiff's account like accrued profits of a partnership. The rule of *Sipley v. Stickney*, 190 Mass. 43, was thereby avoided, since by agreement the defendant's promise to pay to the plaintiff the credit balance in the plaintiff's account became independent of the plaintiff's promise to devote his entire time to the duties of his employment, and also of any implied promise not to compete, so that a breach by the plaintiff of his promise, whether or not in bad faith, is not a bar to his right to claim the credit balance in his favor in the accounting. *Connolly v. Haines-Ce Brook Inc.* 277 Mass. 423, 427. *Barry v. Frankini*, 287 Mass. 196, 200–201. *Waldo Bros. Co. v. Platt Contracting Co. Inc.* 305 Mass. 349, 359. *Minot v. Minot*, 319 Mass. 253, 270. Williston on Contracts (Rev. ed.) § 824.

In considering next the doctrine of clean hands, the terms of the contract must still be kept in mind. It is hard to see how the plaintiff's hands are so unclean that the court should send him away when he seeks only that which the defendant has agreed he should have in the very circumstances which have come about. Although the defendant did not agree that the plaintiff might be unfaithful, it did, we think, agree as to what should be done with the profits even if the plaintiff should be unfaithful. It did not, however, agree to relieve the plaintiff from liability for his wrongful conduct.[1] See *New England Trust Co. v. Paine*, 317 Mass. 542, 550. The plaintiff can recover his earnings without showing any wrongdoing on his own part. *O'Gasa-*

---

[1] The plaintiff apparently concedes, and we think rightly, that the last paragraph of article 8 of the contract does not mean that a payment by the defendant to the plaintiff of the balance of the plaintiff's account as shown on the books would discharge the plaintiff from his accrued obligations resulting from his engagement in a competing enterprise.

*pian* v. *Danielson,* 284 Mass. 27, 34. *Kerwin* v. *Donaghy,* 317 Mass. 559, 573. Compare *Lawton* v. *Estes,* 167 Mass. 181. He is not seeking the benefit of any illegal or wrongful conduct. Compare *Howe* v. *Chmielinski,* 237 Mass. 532; *Church* v. *Brown,* 247 Mass. 282. It would work great hardship to deprive him of nearly three quarters of all he earned during the entire period of his employment because for about four months of that time he was connected with a practically harmless competition, although otherwise his services were wholly faithful and outstandingly successful. As we have seen, no such penalty would be inflicted upon a partner in similar circumstances. °If the plaintiff cannot recover the defendant will retain the benefit of the plaintiff's work, although it will have paid only a small fraction of what it agreed to pay for that work. The doctrine of clean hands is not one of absolutes and should be so applied as to accomplish its purpose of promoting public policy and the integrity of the courts. *MacCormac* v. *Flynn,* 313 Mass. 547, 549–550. To turn the plaintiff out of court in this case would not promote these objects. See *Lurie* v. *Pinanski,* 215 Mass. 229; *Warfield* v. *Adams,* 215 Mass. 506, 523–524; *Moore Drop Forging Co.* v. *McCarthy,* 243 Mass. 554, 564; *Canadian Club Beverage Co.* v. *Canadian Club Corp.* 268 Mass. 561, 571–573; *New York, New Haven & Hartford Railroad* v. *Pierce Coach Lines, Inc.* 281 Mass. 479; *Samuel Hertzig Corp.* v. *Gibbs,* 295 Mass. 229, 231; *Braga* v. *Braga,* 314 Mass. 666, 672; *Johnson* v. *Yellow Cab Transit Co.* 321 U. S. 383, 387.

Finally, the infidelity of the plaintiff as an agent should not, as between him and his principal, entail consequences in the matter of compensation which his principal has agreed should not follow from it. Even in cases of strict trust and where the trustee is not helped by any provision of contract, there is no absolute rule that he should lose his compensation, and when he does lose it this is not upon the theory of a penalty but is upon the theory that he should not be paid for improper service. Restatement: Trusts, § 243. For reasons which have already sufficiently appeared we think that the plaintiff should not be deprived of his

compensation in this case. *Shulkin* v. *Shulkin,* 301 Mass. 184, 193–194. *Lydia E. Pinkham Medicine Co.* v. *Gove,* 303 Mass. 1.

In any accounting with respect to the contract between the parties the plaintiff, who was not actually a partner of the defendant, should be charged with the entire profit of $1,630.74 made by him out of his wrongful connection with the Cushing Stearns partnership and not with only half of that amount. He would be chargeable in addition with damages for his breach of contract, if any damages could be proved. Restatement: Agency, §§ 403, 407 (1). See *Kelly* v. *Allin,* 212 Mass. 327; *Robertson* v. *Hirsh,* 276 Mass. 452.

The defendant in its answer pleaded that the contract between it and the plaintiff dated June 3, 1943, was illegal, and, as we understand, asserted at the trial that this was so because the plaintiff's compensation had never been approved under the wage stabilization act of 1942, 56 U. S. Sts. at Large, 765. The position taken by the trial judge made it unnecessary for him to deal with this contention. The case must therefore be further heard on this issue, as well as on any other issue open on the pleadings and not fully heard.

This suit was brought by trustee process. G. L. (Ter. Ed.) c. 214, § 7. The parties named as trustees in the writ were also named as defendants in the bill. This was unnecessary except as to the defendant National Atlantic Research Corporation, since except as to that defendant the bill contains no allegations seeking to charge these parties in any other way than as trustees in trustee process, and merely naming them in the writ was sufficient for the purpose of a common law attachment of funds in their hands. See *Leffler* v. *Todd,* 316 Mass. 227. The bill was rightly dismissed as to the parties named as trustees except National Atlantic Research Corporation.

The result is that the final decree dismissing the bill is affirmed as to all defendants named in the bill except the defendants Atlantic Research Associates, Inc., and National Atlantic Research Corporation. As to those de-

fendants the decree is reversed and the case is remanded to the Superior Court for further hearing in accordance with this opinion.

*So ordered.*

