R. Casper Swaney *vs.* Clark-Wilcox Company
(and a companion case[1]).

Suffolk. May 4, 1954. — June 8, 1954.

Present: Qua, C.J., Lummus, Spalding, Williams, & Counihan, JJ.

*Contract*, Of employment, Performance and breach. *Agency*, Agent's
compensation, Agent's duty of fidelity.

A salesman of heavy construction equipment employed by a distributor
under a contract providing for payment of the salesman's commissions
only after customers had received and paid for equipment sold by
him was not entitled to commissions on equipment sold through his
efforts but not delivered and paid for until long after he had been dis-
charged by his employer for disloyalty by reason of his having, while
still employed, made derogatory comments concerning his employer
to his employer's suppliers and sought to obtain from the suppliers
the distribution rights for himself.

Two actions of contract. Writs in the Superior Court
dated January 9, 1948, and January 3, 1950, respectively.

The actions were heard by *Forte*, J., upon an auditor's
report.

In this court the cases were submitted on briefs.

*Herbert A. Baker*, for the plaintiff.

*Francis T. Leahy*, for the defendant.

Counihan, J. These are two actions of contract which
were tried together after a hearing before an auditor whose
findings of fact were not final. The plaintiff sought to re-
cover commissions on the sale of certain equipment which
was sold while he was in the employ of the defendant, but
which was not delivered and paid for until after his em-
ployment was terminated in the circumstances hereinafter
described. The defendant denied that it owed the plain-
tiff anything, and further answered that the plaintiff vi-
olated his contractual and fiduciary obligations to the de-

[1] The companion case is by the same plaintiff against the same defendant

fendant by disloyal and unfaithful conduct so that he forfeited his right to any compensation.

The auditor found that the plaintiff was entitled to recover $4,274.92 if as matter of law he was entitled to recover anything, otherwise he found for the defendant. A judge of the Superior Court, sitting without jury, heard the actions on the auditor's report, no other evidence being introduced. After hearing he allowed the defendant's motions for judgment. Rule 88 of the Superior Court (1954). The actions are now here upon the plaintiff's exceptions to the allowance of these motions. There was no error.

The findings of the auditor may be summarized as follows: The defendant was engaged in the business of selling heavy construction equipment used by contractors. It represented as a distributor several national manufacturers of such equipment. The plaintiff entered the employ of the defendant in 1940. He was to receive a commission of 40% on all sales made by him after deducting the defendant's costs and certain expenses. In addition to selling it was his duty to service his accounts, that is, to advise and assist his customers in the use and maintenance of the equipment he sold. The auditor expressly found that "This assistance to a salesman's customers was an important part of his duties." Commissions were to be paid him only after a customer had received the equipment and paid for it although he was allowed a generous drawing account.

Sometime during the summer or fall of 1945, while in the employ of the defendant, the plaintiff decided that he would go into business for himself. Without notice to the defendant he got into communication with several large suppliers of the defendant with whom he had become acquainted by reason of his association with the defendant. He personally talked with officers and representatives of these suppliers at their offices and elsewhere. He told them that he was dissatisfied with his association with the defendant, that the defendant's service department was poorly staffed, that it was not giving proper service to customers, that its customers were dissatisfied, and that other companies for

which the defendant acted as distributor were concerned. In most if not all of these instances he sought to establish business relations with them. He wrote a letter to the Euclid Road Machinery Company dated November 8, 1945.[1] Later after the plaintiff went into business for himself The Cleaver-Brooks Company discontinued the defendant as a distributor and engaged the plaintiff.

The auditor expressly found "that the derogatory statements made by the plaintiff concerning the defendant to the suppliers of the defendant as hereinbefore set forth and his attempts to secure for himself the right to distribute the products of the various manufacturers were made by him while still in the employ of the defendant for his own advantage and to the disadvantage of the defendant."

These efforts of the plaintiff were brought to the attention of the defendant, and as a result the officers of the defendant had a conference with the plaintiff on November 11, 1945. They told him that his negotiations with certain of their suppliers had come to their notice and that they regarded such actions on his part as unfaithful and disloyal conduct. The plaintiff made no denial. As a result they then discharged the plaintiff and he promptly went into business for himself.

On December 29, 1945, the defendant sent the plaintiff a check for $6,950.89 for all commissions which it recognized were due him, less withholding tax. After further correspondence the defendant under date of February 7, 1946, wrote a letter to him, part of which appears in the margin.[2] The plaintiff did not reply to this letter. One of

[1] "I am definitely going to leave Clark-Wilcox Company to establish my own business. Therefore, I should like to have the Euclid account. May I have the opportunity of talking with you about it at your convenience either at Cleveland or some other convenient place? I have made arrangements with a local firm to build a new building for my business. The building permit has not been approved yet but it should be approved in time to pour concrete for the footings before the cold weather."

[2] "With respect to your interest in orders you had written prior to Nov. 12, 1945, we are allowing you your usual commission on such equipment as is actually delivered by May 11, 1946, which is a period of six months from date of severance of our relations with you. Under the circumstances which predicated your release from our employ, we are advised that this is more than equitable."

these actions was entered in February, 1948, and the other in February, 1950.

Before the auditor the plaintiff claimed there were due him commissions on the sale of five pieces of equipment and several small items. The auditor found that the work of the plaintiff was the efficient cause of these sales except the one to the Julian Construction Company. He further found, however, that deliveries of and payment for these goods were not made until many months and in some instances more than a year after the termination of the employment of the plaintiff, and in all instances not until after May 11, 1946. He expressly found "that the plaintiff was not the efficient and predominating cause of the Julian Construction Company sale" the subject of which was not delivered until August 25, 1948.

There was also a dispute between the parties about a fee of 10% for engineering services in connection with the so called Swaney crane which was sold to Stone & Webster Engineering Company and others. As to this the auditor expressly found "that the plaintiff is not entitled to a fee of 10% for engineering services on the Swaney crane and that he was paid in full for all due him by the defendant on the sales of said crane."

It has been said that "The general finding of the trial judge for the plaintiff [or the defendant] after a hearing upon the report of the auditor as evidence imports the drawing of all permissible inferences of which the case is susceptible. It will not be reversed if it can be supported upon all such inferences." *Rosenblum* v. *Ginis,* 297 Mass. 493, 497. And again, "The case was first heard by an auditor, whose findings of fact were not final. . . . [His findings] which as prima facie evidence were not contradicted by other evidence at the . . . trial . . . now must be accepted as true." *Guertin* v. *Trustees of New York, New Haven & Hartford Railroad,* 322 Mass. 91, 92.

The findings of the auditor establish the facts in these cases. Our duty is to apply relevant principles of law to these facts. We are of opinion that we are bound by the

doctrine of the case of *Sipley* v. *Stickney,* 190 Mass. 43. It has been said, "In the earlier cases this doctrine seems to have been applied where the plaintiff had voluntarily failed to complete a piece of work which he had contracted to perform . . . . But the rule of *Sipley* v. *Stickney* has not been limited to such cases. It has been applied generally." *Walsh* v. *Atlantic Research Associates, Inc.* 321 Mass. 57, 62.

The plaintiff relies heavily upon the *Walsh* case to sustain his claims. But that case plainly recognizes that *Sipley* v. *Stickney* stands also for the principle that an unfaithful employee or fiduciary forfeits his right to his employment and to his compensation. The *Walsh* case held, however, that the rule of *Sipley* v. *Stickney* was avoided by a provision of a written agreement there present which provided that Walsh was entitled to recover compensation independent of a breach of contract, whether or not in bad faith. The holding in the *Walsh* case affords no support to the plaintiff in the case at bar. The general rule established in *Sipley* v. *Stickney* that any wilful default in the performance of a contract bars recovery is still law. By more recent decisions this rule has been applied to breach of a contract oral or written because of unfaithful and disloyal conduct of an employee in the absence of special provisions to the contrary. *Walsh* v. *Atlantic Research Associates, Inc.* 321 Mass. 57. *Chaplain* v. *Dugas,* 323 Mass. 91, 93. See *Jackson* v. *Boston Safe Deposit & Trust Co.* 310 Mass. 593, 595; *Grills* v. *Miller,* 322 Mass. 21, 26.

The express finding of the auditor was that "the derogatory statements made by the plaintiff concerning the defendant to the suppliers of the defendant as hereinbefore set forth and his attempts to secure for himself the right to distribute the products of the various manufacturers were made by him while still in the employ of the defendant for his own advantage and to the disadvantage of the defendant." This finding plainly shows unfaithfulness and disloyalty on the part of the plaintiff toward the defendant. It constitutes a wilful default in one of the implied terms of the contract of employment which the plaintiff had with

the defendant. The loss of the business of The Cleaver-Brooks Company which that company gave to the plaintiff in response to his disloyal importunities indicates that the defendant suffered at least some loss on account of his conduct.

Apart from the doctrine of *Sipley* v. *Stickney* it has also been said, "Undivided loyalty to the plaintiff was due from . . . [the] agent. 'It is well settled that the agent is bound to exercise the utmost good faith in his dealings with his principal. As Lord Cairns said, this rule "is not a technical or arbitrary rule. It is a rule founded on the highest and truest principles of morality." *Parker* v. *McKenna*, L. R. 10 Ch. 96, 118.' *Little* v. *Phipps*, 208 Mass. 331, 333." *J. C. Penney Co.* v. *Schulte Real Estate Co. Inc.* 292 Mass. 42, 44.

The plaintiff strongly urges that he is entitled to recover for commissions on sales made before his employment was ended. He claims that he rightly terminated his employment with the defendant but from the report of the auditor it is patent that he was discharged for disloyalty. One of the terms of his employment was that he should be paid commissions only after the goods had been delivered and paid for. Obviously this condition was not complied with for these goods were not delivered and paid for until many months and in some cases more than a year after his employment was severed.

*Exceptions overruled.*